**Frederick C. SIMPSON,
Plaintiff-Appellee,
Cross-Appellant,**

v.

**MIDLAND–ROSS CORPORATION,
Defendant-Appellant,
Cross-Appellee.**

**Nos. 85–1381, 85–1676.**

United States Court of Appeals,
Sixth Circuit.

Argued Aug. 14, 1986.

Decided July 9, 1987.

Rehearing and Rehearing En Banc
Denied Sept. 9, 1987.

Wallace K. Sagendorph, argued, Troy, Mich., for defendant-appellant, cross-appellee.

Rudy J. Huizenga, argued, Beth M. Rivers, Detroit, Mich., for plaintiff-appellee, cross-appellant.

Before ENGEL, KRUPANSKY and RYAN, Circuit Judges.

ENGEL, Circuit Judge.

Appellant Midland-Ross appeals a district court judgment entered upon a jury verdict in favor of its former employee, Frederick

Simpson. Simpson's complaint charged that he was unlawfully discharged in violation of the Michigan Elliott-Larsen Act, Mich.Comp.Laws Ann. § 37.2101 et seq., and the federal Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq.

Midland-Ross asserts that Simpson failed to make out a prima facie case of age discrimination, and that the district court erred in denying its motion for directed verdict and judgment notwithstanding the verdict. Midland-Ross also raises numerous other questions concerning jury instructions and damages. Simpson cross-appeals the denial of his request for prejudgment interest, and Midland-Ross challenges the timeliness of that cross-appeal. Because we conclude that the trial court erred in denying Midland-Ross' motion for judgment notwithstanding the verdict, we do not reach the other issues raised.[1]

## I.

Midland-Ross hired plaintiff-appellee Simpson on January 7, 1974 at age 48, as a sales account manager in the original equipment manufacturing division (OEM) of the marketing department at Midland-Ross' brake division of Owosso, Michigan. Simpson had primary responsibility for the Ford Motor Company account, and later was given responsibility for the Chrysler and Nelson Metals diecasting division accounts. Simpson apparently performed satisfactorily and received adequate reviews despite negative scores and comments on certain aspects of his performance, including problem solving, lack of aggressiveness, and a lack of persistence in pursuing difficult accounts. His last two performance reviews were more negative than previous reviews, but did not indicate that he would be terminated. Simpson was terminated in August 1980 after receiving approximately one month's notice. Mid-land-Ross explained that it laid off Simpson as part of a general reduction in force of the least productive employees based on their relative abilities to penetrate designated product markets. Midland-Ross conceded that the Ford Motor Company account was particularly difficult and that Simpson had been given considerable latitude in obtaining Ford's business. Simpson alleged that his full performance was not evaluated because his supervisors did not take into account his work on Nelson Metals.

Simpson also claimed that he was replaced by a 39–year old who did not perform as well as he had, although the record clearly shows that Simpson's "replacement" did not assume Simpson's former responsibilities until several months after Simpson's termination. Simpson's former supervisor attempted to handle the accounts for approximately three months until October 1980, and then assigned the accounts to the "replacement" whose workload was subsequently transferred to someone else. Both sides offered considerable evidence concerning Simpson's work history and the history of other employees. Most of the evidence offered was neither contradicted nor challenged, but was subject to various interpretations regarding plaintiff's ultimate qualifications as compared to other employees. Simpson offered no direct evidence of age discrimination and, apart from evidence concerning job qualifications and performance, merely introduced statistics regarding decreasing employee age and the average age of persons hired and retained during the relevant period.

Simpson brought suit on September 27, 1983 in Michigan state court, alleging violations of both Michigan's Elliott-Larsen Act and the federal Age Discrimination in Employment Act. Midland-Ross removed the case to federal court on diversity grounds.

---

1. Defendant-appellant Midland-Ross argues that the trial court erred in charging the jury that if its actions in discharging Simpson had been voluntary and intentional, a "willful" violation of the ADEA could be found. We note that *Trans World Airlines v. Thurston*, 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985), which was not available to the district judge in the present case, held that a violation of the ADEA is not willful if the employer simply knew of the potential applicability of that act. Rather, the employer must at least be shown to have acted in "reckless disregard" of ADEA requirements.

A jury found that Midland-Ross had willfully violated both the Elliott-Larsen Act and the ADEA, and awarded Simpson $166,007. Simpson moved to amend the judgment to include liquidated damages, interest, costs and attorneys' fees, while Midland-Ross sought judgment notwithstanding the verdict (JNOV), new trial, or remittitur. The court awarded Simpson $84,000 in liquidated damages but denied Simpson's other motions; the court also denied Midland-Ross' motions.

## II.

▮ Traditionally, a plaintiff who alleges unlawful employment discrimination raises a presumption of such discrimination by satisfying the four criteria of *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). If *McDonnell Douglas* applies literally to an ADEA claim, a plaintiff must demonstrate as a threshold matter:

(1) he was a member of a protected class (age 40 to 70);

(2) he was subjected to adverse employment action;

(3) he was qualified for the position;

(4) he was replaced by a younger person.

*See, e.g., Wilkins v. Eaton Corp.*, 790 F.2d 515, 520 (6th Cir.1986). A plaintiff may also show through circumstantial, statistical, or direct evidence that he has been discriminated against. *Blackwell v. Sun Electric Corp.*, 696 F.2d 1176, 1180 (6th Cir.1983). For analytical purposes, Michigan's Elliott-Larsen Act resembles federal law, and the same evidentiary burdens prevail as in ADEA cases. *Gallaway v. Chrysler Corp.*, 105 Mich.App. 1, 306 N.W.2d 368, 370–71 (1981) (adopting Sixth Circuit analysis in *Laugesen v. Anaconda Co.*, 510 F.2d 307 (6th Cir.1975)).

The plaintiff in *McDonnell Douglas* asserted that he had not been hired because of unlawful race discrimination. Although we recognize that an unlawful discharge may differ markedly from a failure to hire, the Supreme Court has invoked *McDonnell Douglas* criteria in both situations. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

Proof of the four *McDonnell Douglas* elements or other direct or statistical proof raises a rebuttable presumption of discrimination.[2] The burden of production then shifts to the defendant employer to provide a legitimate nondiscriminatory reason for the action taken. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Thereafter the employee must "demonstrate that the proffered reason was not the true reason for the employment decision. This burden now merges with the ultimate burden of persuading the court that [he] has been the victim of intentional discrimination." *Id.* at 256, 101 S.Ct. at 1095.

The Sixth Circuit and Michigan Supreme Court have refused to follow blindly the four-part *McDonnell Douglas* formula in ADEA cases. See *Merkel v. Scovill, Inc.*, 787 F.2d 174 (6th Cir.1986), in which this court reversed judgment for the employees based on the failure to deny defendant's JNOV request; *Sahadi v. Reynolds Chemical*, 636 F.2d 1116 (6th Cir.1980), which affirmed a directed verdict for the employer; and *Matras v. Amoco Oil Co.*, 424 Mich. 675, 385 N.W.2d 586, 589–90 (1986), in which the Michigan Supreme Court disapproved the automatic application of *McDonnell Douglas*. See also *United States Postal Service Bd. of Governors v. Aikens*, 460 U.S. 711, 715, 103 S.Ct. 1478, 1481, 75 L.Ed.2d 403 (1983) (*McDonnell Douglas* never intended to be rigid, mechanized, or ritualistic). We explicitly questioned the value of literal application of *McDonnell Douglas* to ADEA cases in *Laugesen v. Anaconda Co.*, 510 F.2d 307, 312 (6th Cir.1975). In *Laugesen* we adopted a case-by-case approach, one that

---

**2.** The Supreme Court noted that *McDonnell Douglas* should have made apparent that in the Title VII context the threshold showing or "prima facie case" is used to mean a legally mandatory, rebuttable presumption rather than the evidence necessary to permit the trier of fact to infer discrimination. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 n. 7, 101 S.Ct. 1089, 1094 n. 7, 67 L.Ed.2d 207 (1981).

would allow us to remain attentive to the realities of the business world.[3]

■ Even if we fully adopt the premise that the *McDonnell Douglas* factors constitute a prima facie case of impermissible discrimination based on age,[4] we note that two facts substantially weaken Simpson's initial claim: he was not replaced until several months after discharge, and the discharge occurred in the context of a reduction in force due to economic necessity. "[A]n ADEA plaintiff who has been terminated amidst a corporate reorganization carries a greater burden of supporting charges of discrimination than an employee who was not terminated for similar reasons." *Ridenour v. Lawson Co.*, 791 F.2d 52, 57 (6th Cir.1986). Particularly where economic necessity dictates reorganization, a conclusory statement alone is not probative of age discrimination:

> The mere termination of a competent employee when an employer is making cutbacks due to economic necessity is insufficient.... The plaintiff in such reorganization cases must come forward with additional direct, circumstantial, or statistical evidence that age was a factor in his termination.... [Plaintiff] has not

succeeded in this regard. He has come forward with nothing, other than his subjective determination that he was better qualified than [his replacement], to indicate that age played a role in [the employer's] decision to terminate him. This is not a case where the plaintiff presented evidence that management favored younger workers, tended to fire older workers, or indicated in some manner that older workers were held in disfavor....

*LaGrant v. Gulf & Western Mfg. Co., Inc.*, 748 F.2d 1087, 1090–91 (6th Cir.1984). Thus in cases of corporate reorganization a plaintiff must come forward with "additional direct, circumstantial, or statistical evidence that age was a factor in his termination...." *Ridenour v. Lawson Co.*, 791 F.2d 52 (6th Cir.1986); *see also Matras v. Amoco Oil Co.*, 424 Mich. 675, 385 N.W.2d 586, 590 (1986). Even where termination is not based on economic necessity, mere conclusory allegations do not suffice to prove intentional discrimination based on age. *Locke v. Commercial Union Ins. Co.*, 676 F.2d 205, 206 (6th Cir.1982); *Ackerman v. Diamond Shamrock Corp.*, 670 F.2d 66, 70 (6th Cir.1982).[5]

---

**3.** In *Laugesen,* this court examined the House Report on the ADEA and concluded that Congress did not desire that the Act be applied formalistically, but rather that analysis should proceed on a case by case basis. We stated,

> The foregoing language [from the House Report] suggests that perhaps the more strict approach which is evident in the treatment of a Title VII race discrimination case in McDonnell Douglas v. Green may not be desirable here. The progression of age is a universal human process. In the very nature of the problem, it is apparent that in the usual case, absent any discriminatory intent, discharged employees will more often than not be replaced by those younger than they, for older employees are constantly moving out of the labor market, while younger ones move in. This factor of progression and replacement is not necessarily involved in cases involving the immutable characteristics of race, sex and national origin. Thus, while the principal thrust of the Age Act is to protect the older worker from victimization by arbitrary classification on account of age, we do not believe that Congress intended automatic presumptions to apply whenever a worker is replaced by another of a different age.

*Laugesen,* 510 F.2d at 313 n. 4. This court has echoed similar reservations in more recent

cases. *E.g., LaGrant v. Gulf & Western Mfg. Co., Inc.,* 748 F.2d 1087 (6th Cir.1984); *Sahadi v. Reynolds Chemical,* 636 F.2d 1116 (6th Cir. 1980).

**4.** Simpson undoubtedly established the first two elements of the *McDonnell Douglas* test as applied to a discharge claim under *Burdine,* i.e. he was a member of the protected class and was discharged. By contrast, Midland-Ross challenged Simpson's qualifications for his position and initially denied that Simpson was replaced by a younger person although it later admitted that another employee replaced Simpson some three months after Simpson's discharge.

**5.** In cases in which a jury verdict for the plaintiff was upheld, plaintiffs either arguably negated the employer's articulated reason for discharge, *Williams v. Caterpillar Tractor Co.,* 770 F.2d 47 (6th Cir.1985), or offered specific evidence that could be construed as negative references to plaintiffs' ages. *Rose v. National Cash Register Corp.,* 703 F.2d 225 (6th Cir.1983) (testimony regarding new, younger company image and comment regarding future for older employees); *Blackwell v. Sun Electric Corp.,* 696 F.2d 1176 (6th Cir.1983) (negative comment by supervisor, and more favorable treatment of

■ Bearing in mind the admonition of *Laugesen* and despite our skepticism that Simpson established a prima facie case, we recognize that the central issue is whether Simpson was impermissibly discharged due to age discrimination. *LaGrant v. Gulf & Western Mfg. Co., Inc.*, 748 F.2d 1087, 1090 (6th Cir.1984); *Merkel v. Scovill, Inc.*, 787 F.2d 174, 177 (6th Cir.1986); *Wilkins v. Eaton Corp.*, 790 F.2d 515, 523 (6th Cir. 1986). Thus Simpson was required to prove the ultimate issue of intentional discrimination by a preponderance of evidence. *Ridenour v. Lawson Co.*, 791 F.2d 52, 56 (6th Cir.1986); *Davis v. Combustion Engineering, Inc.*, 742 F.2d 916, 920 (6th Cir.1984); *Blackwell v. Sun Electric Corp.*, 696 F.2d 1176, 1180 (6th Cir.1983). Our circuit has differentiated between facts which merely pass a threshold test of sufficiency and those which, if unrebutted, require a court to direct a verdict. *Rose v. National Cash Register Corp.*, 703 F.2d 225 (6th Cir.1983); *Laugesen v. Anaconda Co.*, 510 F.2d 307, 312 (6th Cir.1975).

Since this case proceeded to trial on the merits and resulted in a jury verdict for Simpson, we appropriately address whether Simpson met his ultimate burden of persuasion regarding his age discrimination claim. At least twice our court has chosen to pass over the sufficiency of plaintiff's initial showing and has directly considered the merits of plaintiff's claim. *Ridenour v. Lawson Co.*, 791 F.2d 52, 57–58 (6th Cir. 1986); *Wilkins v. Eaton Corp.*, 790 F.2d 515, 523 (6th Cir.1986). Both cases ordered dismissal based on a lack of evidence from which a reasonable jury could find that age discrimination was a factor in the employee's discharge. See also *United States Postal Service Bd. of Governors v. Aikens*, 460 U.S. 711, 714, 103 S.Ct. 1478, 1481, 75 L.Ed.2d 403 (1983), which found that the court of appeals had unnecessarily evaded the ultimate question of discrimination by framing the issue as whether plaintiff made out a prima facie case even though the case was fully tried on the merits. We therefore consider the evidence regarding the alleged age discrimination to see if Simpson successfully showed that Midland-Ross' reason for discharge was pretextual and that the real reason for his discharge was discrimination based on age.

In support of his claim, Simpson offered statistics regarding the average age of employees in his division as well as the average age of employees retained and fired during the period immediately preceding and following his termination. The average age of workers in Simpson's section (national account managers) was 47.28, in small original equipment managers, 40.25, and in aftermarket sales, 36.2. Simpson offered testimony showing that of those employees who left Midland-Ross, 76.5% were above age 40 and 23.5% were under age 40. Finally, in the two years following Simpson's discharge, 5.8% of those hired were older than 40. Simpson also alleged two other employees were discriminated against because of age, one of whom had chosen early retirement under an incentive plan and one who was demoted.

■ Midland-Ross offered as a legitimate nondiscriminatory reason for Simpson's discharge the general reduction in force due to economic necessity and Simpson's poor performance as a national accounts manager. Simpson's qualifications and quality of job performance were vigorously disputed although the accuracy of the proof actually introduced was rarely challenged. Rather, the dispute centered on the interpretation given certain evaluations and comments, none of which mentioned age or even arguably implied that age was a consideration. Midland-Ross gave reasons for not considering Simpson for another job and for subsequently hiring younger people.[6] Midland-Ross also showed that Simpson was not the oldest

younger replacement). No such evidence is offered here.

6. When an employer reduces its work force for economic reasons, it incurs no duty to transfer the employee to another position within the company. *Ridenour*, 791 F.2d at 517. Simpson admitted that there was nothing in his relationship with Midland-Ross that would have obligated Midland-Ross to transfer him to another position.

employee in his division (national accounts) and that the oldest employee was retained.

■ It is important to note that Simpson does not rely on any direct evidence of discrimination or any evidence that subjectively may be construed to indicate discrimination. Further, Midland-Ross introduced clear testimony that age did not in any way enter into the decision to discharge Simpson. Therefore, we must examine Simpson's statistical evidence to see if it was sufficient to rebut Midland-Ross' stated reasons for discharging him. As in *Wilkins v. Eaton Corp.*, 790 F.2d 515, 523 (6th Cir.1986), we conclude that Simpson's statistical evidence, even if arguably supporting an inference of discrimination to establish a prima facie case, has insufficient probative value to support a jury verdict on the ultimate question of discrimination.

First, Simpson pointed to the average age of employees in various divisions and noted that the OEM division contained the oldest employees. That fact by itself does not indicate age discrimination: age differences among divisions may well reflect the relative experience required of employees or the comparative absence of employee turnover. Simpson in no way showed the importance of his age figures by, for example, alleging discrimination within his department. Statistically, the average age of employees always changes. Even in a total absence of employee turnover, average age increases because each person naturally ages over time. Since the departure of even one older employee will inevitably produce a reduction in average age, the fact that the average age in Simpson's small department decreased by approximately one year due to his discharge demonstrates nothing of statistical significance.

Second, Simpson used the departure of only seventeen people as a basis for his statistical argument. Not only is reliance

upon such a small sample suspect, *Mayor of Philadelphia v. Educational Equality League*, 415 U.S. 605, 618–20, 94 S.Ct. 1323, 1332–33, 39 L.Ed.2d 630 (1974),[7] but Simpson included all who left the company during the relevant period even though they might have retired early under an incentive plan or might have accepted jobs elsewhere. Also, we have no idea whether seventeen people constituted a significant percentage of Midland-Ross' workforce even if all seventeen were within the protected age group and involuntarily left the company. Without comparing employee discharges from the protected group and from a younger group or comparing retention levels between the two groups, Simpson did not even attempt to place his figures in a relevant context so as to make them meaningful. See *Pace v. Southern Railway System*, 701 F.2d 1383, 1388–89 (11th Cir.1983), in which the court rejected an ADEA claim for a similar failure to provide supporting information that made statistical evidence probative of discrimination.

Third, Simpson pointed out that 94.2% of the employees hired in the two years following his discharge were below the age of 40. Again, this figure does not indicate discrimination based on age. Not only does Simpson fail to provide us with the relative qualifications of those hired and the positions to which they were assigned, he neglects vital information regarding the pool of applicants and whether, for example, qualified older employees were available or applied for those jobs. In a Title VII case, this court previously considered employee statistics unaccompanied by evidence regarding qualified potential applicants from the relevant labor market, and concluded that they lacked probative value. *Grano v. Dept. of Dev. of City of Columbus*, 637 F.2d 1073, 1078 (6th Cir.1980). The probative weight of hiring figures also

---

7. A number of courts have recognized that small statistical samples provide little or no probative force to show discrimination. See, e.g., *Coates v. Johnson and Johnson*, 756 F.2d 524, 541 (7th Cir.1985), *Haskell v. Kaman Corp.*, 743 F.2d 113, 121 (2d Cir.1984), and cases cited therein. In a Title VII context, our court has

said that "[w]e recognize that statistical evidence is of much greater value in discrimination cases where large numbers of employees are involved...." *EEOC v. New York Times Broadcasting Service, Inc.*, 542 F.2d 356, 360 (6th Cir.1976).

necessarily depends on the figures to which they are compared, *Hazelwood School Dist. v. United States*, 433 U.S. 299, 310, 97 S.Ct. 2736, 2743, 53 L.Ed.2d 768 (1977), figures which are nonexistent in this case.

Finally, we agree with the trial judge who rejected Simpson's effort to offer one person's early retirement as an example of age discrimination because Simpson offered no proof that the employee was forced to retire. We further agree that a single example of demotion, even if it occured, is insufficient to support an age discrimination claim.

Statistical evidence, such as that offered by Simpson, does not differ greatly from other types of proof. It is relevant, even when believed, only if it tends "to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. Statistics gain relevance in one of two ways: the statistics, standing alone, reasonably lead to a particular conclusion validated by human experience, or comparative statistics point out discrepancies in behavior that would cause the average person to scrutinize the employer's motives. Unless the statistics, standing alone or in comparison, are sufficient to lead the mind naturally to the conclusion sought, they have no probative value; they do not move the proof one way or another. "In short, their usefulness depends on all of the surrounding ·facts and circumstances." *Teamsters v. United States*, 431 U.S. 324, 340, 97 S.Ct. 1843, 1856, 52 L.Ed.2d 396 (1977).

For statistics to be valid and helpful in a discrimination case, "both the methodology and the explanatory power of the statistical analysis must be sufficient to permit an inference of discrimination." *Segar v. Smith*, 738 F.2d 1249, 1274 (D.C.Cir.1984). The facts cited by Simpson do not tell us anything about age other than that some people were of various ages, facts that in themselves are meaningless. Nor does Simpson give a point of comparison for the facts presented, for example, a pattern of employer activity that would naturally lead to a suspicion of age discrimination. Sta-

tistics such as those offered may be interesting perhaps, but are fundamentally irrelevant to an age discrimination claim. Simpson presented nothing that could bring his "cold numbers convincingly to life." *Teamsters*, 431 U.S. at 339, 97 S.Ct. at 1856.

Our examination of the evidence inevitably leads to the conclusion that Simpson failed to show that Midland-Ross' asserted reason for discharging him was pretextual. As in *Chappell v. GTE Products Corp.*, 803 F.2d 261, 268 (6th Cir.1986), we reject any assertion that a decreasing average employee age coupled with other questionable statistics proves the existence of impermissible age discrimination. *See also Wilkins v. Eaton Corp.*, 790 F.2d 515, 523 (6th Cir.1986); *Laugesen v. Anaconda Co.*, 510 F.2d 307 (6th Cir.1975).

A "mere scintilla" of evidence will not suffice to support a jury verdict: in an ADEA case, "[t]here must be evidence of discriminatory purpose ... and there must be evidence from which a reasonable jury could conclude that age was the *more likely* reason for [the employee's] discharge, rather than merely a speculative possibility." *Wilkins v. Eaton Corp.*, 790 F.2d 515, 523 (6th Cir.1983). A judgment notwithstanding the verdict may be granted only if, "upon viewing the totality of the admissible evidence most favorably to the party opposing the motion, a reasonable trier of fact could draw but one conclusion." *Ridenour v. Lawson Co.*, 791 F.2d 52, 55 (6th Cir.1986).

We conclude that Midland-Ross offered a legitimate nondiscriminatory reason for Simpson's discharge, and that even if Simpson made out a prima facie case of age discrimination within the meaning of *McDonnell Douglas*, his proof was insufficient to show that Midland-Ross' stated reason was pretextual and that Midland-Ross discharged him because of his age. We again note that Simpson offered no direct evidence that Midland-Ross discriminated against him based on age. Nor did Simpson cite circumstances which would lead a reasonable person to infer discrimination based on age. In such circumstanc-

es, it was inappropriate for the district court to deny Midland-Ross' motion for judgment notwithstanding the verdict.

For the reasons stated above, the judgment of the district court is hereby REVERSED.

David A. Nelson, Circuit Judge, concurred in part and dissented in part and filed opinion.