**Walter PARKER, Plaintiff,**

v.

**DIAMOND CRYSTAL SALT CO., Defendant.**

**No. G86–95 CA.**

United States District Court, W.D. Michigan, S.D.

Feb. 16, 1988.

J. Walter Brock, Muskegon, Mich., for plaintiff.

Timothy H. Honlett, Michael L. Johnson, Detroit, Mich., for defendant.

## OPINION GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

HILLMAN, Chief Judge.

### FACTS

This is a suit for damages for age discrimination and wrongful discharge. Plain-tiff, Walter Parker, began working for Hardy Salt Company on May 5, 1976 at the company's Manistee plant. Plaintiff stated in his deposition that when he was hired the plant manager told him that he would have a lifetime job as long as he performed in a satisfactory manner. Parker also testified that in 1983, his supervisor in the production department, Mr. Walter, told him that as long as Mr. Walter had a job at Hardy Salt, Mr. Parker would have a job there, too.

Plaintiff's position as shift supervisor required plaintiff to switch between afternoon and night shifts each week. In March of 1984, pursuant to instructions of plaintiff's doctor and plaintiff's request, Hardy transferred plaintiff from shift supervisor to production supervisor, a job working the day shift only. The organizational chart for the Manistee plant dated February 26, 1985 shows that the warehouse and production superintendents were Mr. Balcer and Mr. Walter, respectively. Eleven supervisors worked under Mr. Balcer and Mr. Walter, including Mr. Parker.

On April 1, 1985, defendant Diamond Crystal Salt Co. ("Diamond Crystal") purchased the Hardy Salt Company. Mr. Fitzgerald, presently Vice President for Diamond Crystal, reviewed the profit and loss statements of Hardy Salt prior to the acquisition. In his affidavit he states that Hardy Salt was losing money and that its financial statements demonstrated a deteriorating financial situation. Mr. Fitzgerald states that Diamond Crystal would not have purchased Hardy Salt if it could not have cut costs. He states that Diamond Crystal had concluded that the Manistee plant had too many supervisors and that one of Diamond Crystal's cost cutting efforts would be to reduce the number of supervisors at the Manistee plant.

On April 10, 1985, Diamond Crystal's management met with salaried employees at the Manistee plant. Defendant's Technical Manager, Mr. Bowersox, states in his affidavit that at this meeting Diamond Crystal informed its salaried employees

that Diamond Crystal could not guarantee future employment for Hardy Salt Company's salaried employees. Plaintiff recalls being present at this meeting and hearing this statement.

On April 24, 1985, pursuant to a decision to downsize the salaried employee structure by 25 percent at the Manistee facility, Diamond Crystal reorganized the salaried employee positions, eliminated 9 out of 35 salaried positions, and dismissed the employees who had held the eliminated positions. Three supervisor positions in Mr. Parker's department, including Mr. Parker's position, were eliminated. Plaintiff's job responsibilities were then divided between two other supervisors who were retained by defendant. At the time of his discharge, plaintiff was 55 years old. The two supervisors who assumed plaintiff's duties were ages 34 and 39.

Mr. Bowersox, in his affidavit, states that plaintiff's age was not a factor in the decision to terminate him. Mr. Bowersox also states that the average age of the salaried employees including plaintiff whose jobs were eliminated was 43, while the average age of retained salaried employees was 42.7. Mr. Bowersox also testified in his deposition that plaintiff's job performance had nothing to do with Diamond Crystal's decision to terminate plaintiff. It appears from the documents in the record that plaintiff was performing his job adequately. Plaintiff states in his affidavit that at the time of his discharge, he was not asked whether or not his health would permit him to work shifts other than the one he had been working.

Five months after the reorganization Diamond Crystal created a new supervisor position in plaintiff's former department involving different duties than those of plaintiff's former position. According to Mr. Bowersox, Diamond Crystal created the new position in order to facilitate reducing overtime in plaintiff's former department. The new supervisor was responsible for overseeing several operations in addition to those operations formerly supervised by plaintiff. The new position also involved a rotating swing shift. Defendant transferred Mr. Espvik, age 38, from his former position as safety director to fill the new supervisor position. Defendant did not consider rehiring plaintiff, or any of the other dismissed employees, for the job, although plaintiff states in his affidavit that he was ready to return to work.

On February 6, 1986, Parker filed this lawsuit against Diamond Crystal. His complaint alleges that he was replaced by a younger employee, and that his termination violated the Elliott-Larsen Civil Rights Act, the Age Discrimination in Employment Act ("ADEA"), and also constituted a breach of his employment contract. The case was arbitrated, and on February 3, 1987, pursuant to a demand by the plaintiff for a trial de novo, this court entered an order vacating the arbitration award.

Defendant moved for summary judgment on November 18, 1987. Plaintiff filed his reply brief on December 21, 1987. No other motions are pending. The case has been mediated, and, in an order dated December 21, 1987, the court extended the deadline for response to the mediation award until ten days after the court decided the summary judgment motion.

## DISCUSSION

This motion for summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 provides that "judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions of file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Defendant Diamond Crystal, as the movant, carries the burden of establishing the absence of genuine issues of material fact. If, however, the moving party establishes that the respondent has failed to produce any evidence in support of an essential element of his cause of action, then summary judgment may properly be granted in the movant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91

L.Ed.2d 265 (1986). The court must consider all pleadings, depositions, and admissions on file, and view all inferences from the record "in the light most favorable to the party opposing the motion." *United States v. Diebold*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Smith v. Hudson*, 600 F.2d 60, 64 (6th Cir.), *cert. dismissed*, 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979).

A. *Plaintiff's claims under the ADEA and the Elliott-Larsen Civil Rights Act*

■ Judicial interpretation of Michigan's Elliott-Larsen Civil Rights Act follows federal interpretation of the ADEA, so the court will apply the same analysis and evidentiary burdens to both claims. *See Simpson v. Midland-Ross Corp.*, 823 F.2d 937, 940 (6th Cir.1987); *Matras v. Amoco Oil Co.*, 424 Mich. 675, 385 N.W.2d 586 (1986); *Gallaway v. Chrysler Corp.*, 105 Mich.App. 1, 306 N.W.2d 368, 370–71 (1981).

To establish a prima facie case of employment discrimination under these statutes, plaintiff must "present evidence, 'which, when viewed in the light most favorable to the plaintiff, would permit a reasonable jury to find that he was discharged because of his age.'" *La Grant v. Gulf & Western Mfg. Co., Inc.*, 748 F.2d 1087, 1090 (6th Cir.1984) (quoting *Rose v. National Cash Register Corp.*, 703 F.2d 225, 227 (6th Cir.), *cert. denied*, 464 U.S. 939, 104 S.Ct. 352, 78 L.Ed.2d 317 (1983)). There must be evidence showing that age made a difference in defendant's decision to discharge plaintiff. *Ackerman v. Diamond Shamrock Corp.*, 670 F.2d 66 (6th Cir.1982). One method for plaintiff to establish a prima facie case would be for him to show that he was between 40 and 70 years of age, that his employer terminated him from a position for which he was qualified, and that his employer replaced him with a younger person. *La Grant*, 748 F.2d at 1090; *Simpson*, 823 F.2d at 940–41.

Plaintiff claims that defendant "replaced" him with Mr. Espvik, a younger person. The record, however, does not support a finding that Parker was "replaced." It is undisputed that defendant reduced its workforce and that reduction was an economic necessity for the business. Defendant eliminated Parker's position and split his former job duties between two of the retained supervisors. The position that Mr. Espvik assumed five months after plaintiff's discharge involved different duties than those plaintiff had performed. Although the supervisors who assumed plaintiff's job duties and Espvik were younger than plaintiff, they were not hired by the company after the reduction but were among the employees defendant retained in its workforce reduction.

The Sixth Circuit has held that "'[A]n ADEA plaintiff who has been terminated amidst a corporate reorganization carries a greater burden of supporting charges of discrimination than an employee who was not terminated for similar reasons.'" *Simpson*, 823 F.2d at 941 (quoting *Ridenour v. Lawson Co.*, 791 F.2d 52, 57 (6th Cir.1986)). "'Evidence that a competent older employee was terminated, and a younger employee was retained, is insufficient standing alone to establish a prima facie case when the employer reduces his workforce because of economic necessity.'" *Dabrowski v. Warner-Lambert Co.*, 815 F.2d 1076 (6th Cir.1987) (quoting *Matras*, 424 Mich. at 684, 385 N.W.2d 586). In such situations, the plaintiff must come forward "with additional direct, circumstantial, or statistical evidence that age was a factor in his termination." *La Grant*, 748 F.2d at 1090–91.

Although defendant has presented no explanation for why it chose to eliminate the particular positions that it did, under *Matras* and *Simpson*, it is the plaintiff's burden to provide some evidence from which a jury could infer that Parker's age influenced defendant's choice. According to the depositions and affidavits in the record, defendant's decision to eliminate Parker's position had nothing to do with Parker's age or his job performance. Nothing in the record suggests "that management favored younger workers, tended to fire older workers, or indicated in some manner that older workers were held in disfavor...."

*La Grant,* 748 F.2d at 1090–91. Instead, the evidence demonstrates that plaintiff was terminated as part of a business decision to eliminate 25 percent of the salaried positions at the Manistee plant in order to cut costs, that seven of the eight employees terminated with Parker were younger than he was (under 55), and that the average age of the supervisors in plaintiff's department who were retained was the same as the average age of those who were discharged (43).

*Redfield v. INA,* No. CV 84–0321–WJR (Kx) (C.D.Cal. April 30, 1986) [available on WESTLAW, 1986 WL 20831], does not support plaintiff's position. In *Redfield,* the court found, after trial, that the evidence demonstrated age had been a determining factor in the plaintiff's discharge. In addition, the *Redfield* court found that the employer had failed to comply with the policies relating to internal job search before discharging Redfield. Unlike the court in *Redfield,* I find no facts in the record to support plaintiff's assertion that age was a determining factor in defendant's discharge decision other than the circumstances held insufficient in *Simpson.*

Defendant has demonstrated that there is no evidence upon which a reasonable jury could base a finding that age was a factor, much less a determining factor, in defendant's decision to discharge plaintiff. Therefore, no genuine issue of material fact remains and defendant is entitled to summary judgment on plaintiff's claims of age discrimination under the ADEA and the Elliott-Larsen Civil Rights Act. *See Sahadi v. Reynolds Chemical,* 636 F.2d 1116 (6th Cir.1980); *Ackerman,* 670 F.2d at 70.

### B. *Breach of Contract*

In Michigan, oral assurances of permanent employment by an employer may create an enforceable employment contract. *Toussaint v. Blue Cross & Blue Shield of Michigan,* 408 Mich. 579, 292 N.W.2d 880 (1980); *Renny v. Port Huron Hosp.,* 427 Mich. 415, 398 N.W.2d 327 (1986). Plaintiff asserts that the oral assurances he received in 1976 and 1983 created a contract not to discharge him absent just cause, that Diamond Crystal was bound by this contract, and that Diamond Crystal discharged him without just cause. Defendant maintains that even if oral assurances once established contract binding Hardy Salt Company to discharge Parker only with just cause, the contract was superseded by Diamond Crystal's employment policy which did not guarantee Parker continued employment. Defendant argues, in the alternative, that the *Toussaint* doctrine is inapplicable to employee terminations due to reductions in workforce.

■ On the record before me, no reasonable jury could find that plaintiff had a legitimate expectation that he would retain a job under the new ownership absent unsatisfactory work performance. *Toussaint,* 408 Mich. at 599, 292 N.W.2d 880; *Longley v. Blue Cross & Blue Shield,* 136 Mich.App. 336, 356 N.W.2d 20, 21 (plaintiff's expectations must be legitimate). Parker testified in his deposition that he recalls being at a meeting on April 10, 1985 and hearing a representative of the new owner, Diamond Crystal, state that "they would try to retain all the employees but that there was no personal guarantee that anybody would remain employed with them." The only assurances of continued employment were uttered to plaintiff years before the Diamond Crystal takeover. *Cf. Grubb v. W.A. Foote Memorial Hosp. Inc.,* 741 F.2d 1486, 1501 (6th Cir.1984), *vacated on rehearing on other grounds,* 759 F.2d 546 (6th Cir.), *cert. denied,* 474 U.S. 946, 106 S.Ct. 342, 88 L.Ed.2d 289 (1985) (declining, in dicta, to recognize obligation to recall laid-off employees, stating plaintiff's expectations of established personnel policies during period of consolidation and restructuring following merger were unrealistic); *Lay v. Detroit Steel Prod.,* 83 CV–0250–DT, bench op. (E.D.Mich. November 28, 1984) (granting defendant's motion for summary judgment on *Toussaint* claim of employee whose job was eliminated, noting the significance of the lack of any promises of employment to employee by successor company).

■ Alternatively, even if a fact-finder could reasonably conclude that Diamond Crystal had an obligation not to discharge Parker without cause, there is no genuine issue of fact concerning whether defendant established "cause" in this case. Defendants terminated plaintiff's employment, and the employment of two of his co-supervisors, because it needed to reduce its workforce to cut costs. In *Friske v. Jasinski Builders, Inc.*, 156 Mich.App. 468, 402 N.W.2d 42, *lv. den.*, 428 Mich. 880 (1987), the Michigan Court of Appeals held that termination of the employment of an otherwise competent employee due to an economically motivated business closing is not grounds for a wrongful discharge claim. *Friske* involved a contract which relieved all obligations of the employer if an employee was terminated for "sufficient cause." The court rejected plaintiff's argument that the cause must be related to the performance of plaintiff's job duties and reasoned that "[t]o hold otherwise would impose an unworkable economic burden upon employers to stay in business to the point of bankruptcy in order to satisfy employment contracts and related agreements terminable only for good or sufficient cause." *Id.* 402 N.W.2d at 44.

Prior to *Friske*, at least one court in this circuit recognized the difficulty of applying the "just cause" analysis to *Toussaint* claims resulting from reductions in workforce. *See Grubb v. W.A. Foote Mem. Hosp., Inc.*, 533 F.Supp. 671, 672–73 (E.D. Mich.1981) (Boyle, J., declining to extend *Toussaint* to a situation involving position elimination or work reduction, absent further guidance from state courts), *aff'd*, 759 F.2d 546 (6th Cir.), *cert. denied*, 474 U.S. 946, 106 S.Ct. 342, 88 L.Ed.2d 289 (1985). As of this date, it is difficult to predict which way the Sixth Circuit will go on this question. The court of appeals recently vacated an opinion which held that a district court properly submitted to the jury the issue of whether a discharge due to reduction in workforce constituted "just cause" under *Toussaint*. *Boynton v. TRW*, 781 F.2d 555, *vacated and reh. en banc granted*, (6th Cir.1986). Judge Wellford concurred in the result in *Boynton*, but wrote separately to argue that *Toussaint* does not apply to a "reduction in force due to economic conditions."

As this is ultimately a question of state law, however, this court must rely on decisions of the Michigan courts for guidance. Given the holding in *Friske*, I conclude that plaintiff's breach of contract claim must fail. The Michigan Court of Appeals decided that in the plant closing situation, an employer need not show what is usually intended as "cause" under a just cause contract—unsatisfactory work performance. In other words, if the positions were eliminated due to economic necessity, the employer need not justify why it eliminated the positions that it did to avoid breaching a "sufficient cause" contract.

The inquiry in this case is similar to that faced by the court in *Friske*, except plaintiff's employment contract, if any, is implied from the assurances plaintiff received in 1976 and 1983. Because forcing employers to retain a certain number of employees makes no more sense than forcing employers to stay in business, defendant's need to reduce its salaried positions was adequate cause to justify discharge. Indeed, the *Friske* court cited a workforce reduction case, *Sahadi, supra*, as authority for its statement that "termination of the employment of an otherwise competent employee due to an economically motivated business closing is not grounds for a wrongful discharge claim." *Friske*, 402 N.W.2d at 44. Plaintiff has not presented the court with any evidence from which a fact finder could infer that the reason defendant eliminated three, or, ultimately, only two supervisory positions was not economic need.

I recognize that an employer may attempt to use selective job elimination as a pretext for prohibited discrimination. However, an employee's remedy in such a situation lies in a suit under anti-discrimination statutes designed to compensate employees for discriminatory employment practices. In this case, plaintiff failed to present evidence from which a jury could find that age was a determining factor in Diamond Crystal's decision to eliminate his position or terminate his employment. Ac-

cordingly, defendant's motion for summary judgment is granted.