14 F.3d 601
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 Leila JENKINS, Plaintiff;
James Francis, Plaintiff, Cross-Appellee;
Vivian Rairdon, Plaintiff-Appellant, Cross-Appellee;
Betty Umstead and Ruth Davis, Plaintiffs,
v.
HOLLOWAY SPORTSWEAR, INC., Defendant-Appellee, Cross-Appellant.
 Nos. 92-4042, 92-4074.
 United States Court of Appeals, Sixth Circuit.
 Dec. 8, 1993.
 
 Before MARTIN and BOGGS, Circuit Judges; and JOINER, Senior District Judge.*
 PER CURIAM.
 
 
 1
 Plaintiffs Leila Jenkins, James Francis, Vivian Rairdon, Betty Umstead, and Ruth Davis brought this suit under the Age Discrimination in Employment Act and related state law against defendant Holloway Sportswear, Inc., their former employer. The ADEA claims were tried to a jury and the state claims before the district judge. At the close of plaintiffs' case, the district court dismissed the state claims with respect to all five plaintiffs and directed a verdict against Jenkins, Umstead, and Davis on the ADEA claims. At the close of all the evidence, the jury returned a verdict in favor of Francis and Rairdon. In her appeal, Rairdon argues that the district court improperly determined the period for which she would be eligible for back wages. In its cross-appeal, Holloway argues, among other things, that the district court erred in denying its motion for j.n.o.v. with respect to both plaintiffs. We agree with Holloway and accordingly reverse the judgment of the district court. Because of this disposition, we need not address Rairdon's arguments, nor the other issues raised by Holloway with respect to mitigation and calculation of damages.
 
 
 2
 * A
 
 
 3
 Plaintiffs were employees of Holloway. They alleged in their complaint that Holloway terminated them because of their ages, in violation of ADEA and state law, and demanded damages, back pay, and reinstatement or front pay in lieu of reinstatement.
 
 
 4
 The ADEA claims were tried to a jury and the state claims before the district judge, beginning October 10, 1989. At the close of plaintiffs' case, Holloway moved to dismiss the state claims and moved for a directed verdict on the ADEA claims. The court granted the motion for dismissal of the state claims with respect to all five plaintiffs; none of them appeals that decision. The court granted a directed verdict with respect to Jenkins, Umstead, and Davis, who do not appeal. At the close of all the evidence, Holloway renewed its motion for directed verdict on the ADEA claims of Rairdon and Francis. The court denied the motions, and the jury returned verdicts in favor of Francis and Rairdon on October 19, 1989, awarding them damages for back pay and lost pension benefits.
 
 
 5
 The court, in response to Holloway's motion for reduction of damages commensurate with the evidence at trial, calculated Francis's and Rairdon's lost wages and vested pension benefits. Francis accepted the court's remittitur and does not appeal the award. Rairdon, however, requested a new trial on the issue of back pay only; that trial concluded in June 1992. Rairdon again was awarded damages, but she appeals the court's decision to limit her damages for lost pay to the period between her discharge and the first trial. Holloway argues on its cross-appeal that the district court erred in denying its motions for j.n.o.v. or new trial and also raises several other issues regarding mitigation and calculation of damages.
 
 B
 
 6
 * Francis was hired by Holloway in 1974 when he was 42 years old. He was promoted to manager of the sewing department in 1984, when he was 52 years old. On April 15, 1986, Francis bought a restaurant; he worked approximately 25 to 50 hours per week at the restaurant in addition to his job at Holloway. Francis also testified that he had done other outside work throughout his employment at Holloway. In May 1986, Francis began to miss work at Holloway due to an ulcerated foot. He provided "doctor's slips" to Holloway, which covered the period from June 3 to June 18, 1986. Because they had not heard from Francis after June 18, three Holloway executives made several trips to Francis's restaurant to contact him. Restaurant personnel informed these three (Randy Holloway, president; Roy Leasure, vice president; and Hans Lekien, vice president of manufacturing) that Francis was running errands. Francis admitted at trial that he was running errands for the restaurant during the time that he missed work at Holloway. According to Randy Holloway, Leasure, and Lekien, they left messages at the restaurant for Francis to contact them.
 
 
 7
 Randy Holloway wrote Francis on July 8, 1986, indicating that Holloway understood Francis to have terminated his employment because of his unexplained absence. Lekien testified that Francis then contacted him and said that he was interested in returning to work. According to Randy Holloway, he and Leasure went to Francis's restaurant to meet with him; they decided to reinstate him, agreeing to let him report for only three or four hours per day due to his foot problem and making arrangements to have him seated at all times. According to Randy Holloway, Leasure, and Lekien, Francis was told he was needed on a part-time basis because of the realignment of the sewing lines. Two and a half weeks later, Francis was discharged because, Lekien testified, he had missed several days, once because he took a fishing trip. Randy Holloway testified that during this two and a half week period, he went to the restaurant and was told Francis was out buying supplies. Francis said that he missed work during that period due to the flu.
 
 
 8
 Francis admitted on cross examination that Holloway management spoke with him about problems relating to lack of dedication to his job and his failure to report to work. Francis admitted that he did not feel that age was a factor behind the July 8 termination letter.
 
 
 9
 Francis testified that he thought Lekien did not want somebody with his (Francis's) experience around to expose any mistakes or challenge him; Lekien had arrived a few months prior to Francis's discharge. Francis also testified that he thought age was a factor because his salary was $10,000 to $12,000 higher than that of his replacement, who was 26 or 27 years old.
 
 2
 
 10
 Rairdon, 61 at the time she was terminated, was promoted to personnel manager at Holloway in 1980. Holloway states that it discharged her because of her poor and deteriorating job performance, citing missed employee raises, mishandled insurance paperwork, resistance to learning computer skills, failure to complete tasks assigned to her, and irritation of fellow employees, despite efforts to correct these deficiencies.
 
 
 11
 James Borchers, Holloway's current personnel manager and former credit manager, testified that he received a number of complaints about Rairdon missing merit pay increases and mishandling insurance paperwork. He testified that at times he had to act as an intermediary between Rairdon and employees when raises were missed or insurance paperwork mishandled because the employees had trouble communicating directly with her. He recounted an occasion where Rairdon became difficult and upset when confronted with twice having missed an employee's merit increase; he says she admitted a week later that marital problems were affecting her. Finally, he testified that upon assuming the position of personnel manager, he found the files in disarray and not computerized.
 
 
 12
 Leasure testified to specific instances of Rairdon not getting along with fellow employees, her neglect of her responsibility to see that employees timely received pay increases, and employee complaints that Rairdon mishandled insurance paperwork. He testified that supervisors attempted to solve their own personnel problems because Rairdon's conduct was intolerable. He testified that her paperwork and office were a "complete wreck" and that she failed to follow through on requests from him, such as providing requested files and computerizing some reports. He says he provided her with an assistant, but she declined to make use of the assistant. Finally, he testified that she admitted having marital problems and that he told her not to let her personal life affect her job performance.
 
 
 13
 Lekien testified that he received employee complaints about Rairdon's mishandling of insurance claims, her inattention to employee pay raises, inconsistent discipline that employees received for absenteeism, and late filing of employee insurance claims, and that she failed to provide him with an insurance card. He testified that Rairdon upset employees during exit interviews, recounting specific instances. Lekien testified that Francis complained about Rairdon.
 
 
 14
 Randy Holloway testified that Rairdon failed to follow up on employees' insurance benefits in a timely fashion, that she irritated people, that he received complaints about how she treated employees, that she refused to cooperate in the company computerization process, and that she admitted she was having marital problems, which he cautioned her not to let affect her job performance.
 
 
 15
 Ralph Keller, supervisor of jacket design, testified that he had received complaints from employees that Rairdon was not giving proper attention to their insurance claims. Marie Sosby, the former supervisor of the nylon line, testified that she received complaints about the way that Rairdon handled the employees' paperwork and that she had a problem with Rairdon's handling of an administrative matter when she was not paid properly for a period of sick leave.
 
 
 16
 Holloway also points to Rairdon's own testimony that she missed pay raises at times, that employees complained about the missed raises, that Leasure counselled her about those missed raises, that employees complained about insurance matters, that Leasure counselled her about the insurance matters, that she only spoke with the "computer person" once about assisting her in putting records into the computer, and that she was counselled not to let her personal problems interfere with work. Holloway notes that both Francis and Jenkins (prior to the dismissal of her claims) testified that they had problems with Rairdon. Rairdon's expert witnesses in the personnel placement field testified at their depositions before the trial on damages that Rairdon was not qualified to be a personnel manager. Finally, Holloway asserts that no witness at trial testified that Rairdon was a good personnel manager.
 
 
 17
 Rairdon appears to admit that she was unqualified and untrained to be personnel manager, and she relies on testimony of Holloway's witnesses for support. Rairdon's expert, Kortjohn, too, testifying at the trial on damages regarding Rairdon's ability to mitigate damages by finding other work, stated that she was not qualified to be a personnel manager and that she would have been qualified only for general clerical work. However, Rairdon alleges that Randy Holloway told her, two or three months before her discharge, that she was "doing fine" and her job "remains the same."
 
 
 18
 Rairdon points to Leasure's testimony that he didn't think Rairdon was "able to really keep up" as the company was growing. Rairdon testified that Lekien told her, five months before she was terminated, that Holloway keeps its employees "too long." On cross examination, Rairdon added that she believed that Lekien was referring to old people.
 
 
 19
 Rairdon notes that Holloway offered no documentary evidence to support its claims of Rairdon's poor job performance. Rairdon testified that she was never given any indication by anyone in authority that she was not getting along properly with other employees, that Lekien's complaints were never conveyed to her, and that when she asked for help from the computer programmer, he was too busy to help her.
 
 II
 
 20
 and
 
 
 21
 The standard for reviewing the denial of a motion for j.n.o.v. is whether the evidence, viewed in the light most favorable to the non-moving party, raises a material question of fact for the jury. Agristor Leasing v. A.O. Smith Harvestore Products, Inc., 869 F.2d 264, 268 (6th Cir.1989). Where the reviewing court finds that the evidence points so strongly in favor of the movant that reasonable minds could not come to a different conclusion, granting a j.n.o.v. is warranted. Chappell v. GTE Products Corp., 803 F.2d 261, 265 (6th Cir.1986), cert. denied, 480 U.S. 919, 107 S.Ct. 1375 (1987). J.n.o.v. is especially appropriate in age discrimination cases "due to the possibility that sympathy for the plaintiff may present an overriding but impermissible factor in a jury verdict for plaintiff." Id. We conclude that j.n.o.v. should be entered in this case.
 
 
 22
 The familiar elements of a prima facie case of age discrimination, where (as here) plaintiff lacks direct evidence of discrimination, are: (1) plaintiff was a member of a protected class; (2) plaintiff was discharged; (3) plaintiff was qualified for the position; and (4) plaintiff was replaced by a younger person. Fite, 861 F.2d at 889 (citing Wilkins v. Eaton Corp., 790 F.2d 515, 520 (6th Cir.1986)). Simpson v. Midland-Ross Corp., 823 F.2d 937, 940-41 (6th Cir.1987), instructs that this four-part test from McDonnell Douglas is not blindly followed in ADEA cases; rather, this court has "adopted a case-by-case approach, one that would allow us to remain attentive to the realities of the business world."
 
 
 23
 An ADEA plaintiff has the ultimate burden of proving intentional discrimination. Simpson, 823 F.2d at 942. The plaintiff must produce evidence that age was a factor in the employer's decision to discharge the plaintiff and that but for this factor, the plaintiff would not have been discharged. Phelps v. Yale Security, Inc., 986 F.2d 1020, 1023 (6th Cir.) (citing Chappell, 803 F.2d at 265-66), cert. denied, 114 S.Ct. 175 (1993). "[M]ere conclusory allegations do not suffice to prove intentional discrimination based on age." Simpson, 823 F.2d at 941 (citing Locke v. Commercial Union Ins. Co., 676 F.2d 205, 206 (6th Cir.1982), and Ackerman v. Diamond Shamrock Corp., 670 F.2d 66, 70 (6th Cir.1982)). Simpson further indicated that the court, in reviewing a denial of j.n.o.v. after a jury verdict for the plaintiff, should consider the evidence regarding the alleged age discrimination to see if the plaintiff has successfully shown that the employer's reason for discharge was pretextual and that the real reason for the discharge was discrimination based on age. Id. at 942. See also Phelps, 986 F.2d at 1023-24 (assumes plaintiff established prima facie case and addresses the ultimate issue of whether plaintiff had established discrimination).
 
 B
 
 24
 After carefully examining the record and considering the parties' arguments, we conclude that neither Francis nor Rairdon has met the burden imposed on ADEA plaintiffs. Thus, the district court erred in not granting Holloway's motion for j.n.o.v. We address the claims of each plaintiff in turn.
 
 
 25
 * Francis does not adduce any evidence that, but for Holloway's alleged discriminatory animus, he would not have been fired. The evidence overwhelmingly indicates that Francis was discharged because he failed to show up for work, even when Holloway had made efforts to accommodate his medical needs with respect to his ulcerated foot. Francis admits that he was terminated in July 1986 because he had missed work; he fails to indicate any facts that would show that age was a motivating factor in the August 1986 termination. Given the lengths to which Randy Holloway, Leasure, and Lekien went to get Francis to return to work--including a number of trips to his restaurant to talk with him, reinstatement after the July discharge, and accommodating his medical needs--no reasonable jury could find that age was a motivating factor behind his termination.
 
 
 26
 Francis argues, as evidence of age being a motivating factor, that he was replaced by a younger person with a lower salary and that he thought Lekien did not want somebody with more experience than him (Lekien) around. Such conclusory allegations, however, are not enough to establish a claim of discrimination under ADEA. Further, even if Lekien sought to have Francis discharged because of his experience, that alone fails to establish an ADEA claim. See Hazen Paper Co. v. Biggins, 113 S.Ct. 1701, 1707 (1993) (length of employment not the same as age). Further, Francis presents no evidence that Holloway considered his salary and that of his replacement in deciding to terminate him; the evidence indicates that he was treated individually on his merits. See Bay v. Times Mirror Magazines, Inc., 936 F.2d 112, 117 (2d Cir.1991) (employer legitimately may consider salary in making employment decisions so long as it treats each employee individually on his merits and bases its decision solely on financial considerations). Thus, without more, Francis's replacement by a younger person with a lower salary does not support his claim of age discrimination. Similarly, Francis is unable to show that Holloway's proffered reason for terminating him was pretextual.
 
 
 27
 The district court erred in not granting Holloway's motion for j.n.o.v. with respect to Francis.
 
 2
 
 28
 Holloway asserts as the legitimate, nondiscriminatory reason for its termination of Rairdon that she was not qualified for her position and performed poorly. While qualification for the position is an element of an ADEA plaintiff's prima facie case, here we shall treat it as a pretext issue because Holloway has raised it as the legitimate, nondiscriminatory reason for discharging Rairdon. We conclude that Rairdon has not presented evidence that a reasonable jury could find shows pretext.
 
 
 29
 A parade of witnesses testified to complaints about Rairdon's missing pay increases and her mishandling of insurance paperwork. Witnesses also testified that Rairdon's office was in disarray and that she failed to computerize files, as Holloway had requested of her. Rairdon, too, admitted that she had missed pay raises and that employees had complained about the missed raises and mishandled insurance matters. In her reply brief, Rairdon admits that she lacked the training and qualifications to be a personnel manager.
 
 
 30
 Given the testimony in the record and Rairdon's admissions with respect to her qualifications, Rairdon cannot show that Holloway's proffered reason for discharging her was pretextual. Rairdon does not rebut the testimony regarding employee complaints about her performance; she admits that she was unqualified for her position. The evidence she offers to establish pretext is Lekien's statement regarding employees being at Holloway "too long" and Leasure's statement that Rairdon was not "able to really keep up" as the company was growing. Lekien's statement was made five months before Rairdon was terminated and was unrelated to her termination. Such an isolated and ambiguous statement is insufficient to show age discrimination. See Gagne v. Northwestern Nat'l Ins. Co., 881 F.2d 309, 314 (6th Cir.1989). Leasure's statement appears to be age-neutral. Finally, Randy Holloway's statement that she was doing fine and her job remained the same is not enough for a rational jury to find pretext.
 
 
 31
 The district court erred in not granting Holloway's motion for j.n.o.v. with respect to Rairdon.
 
 III
 
 32
 For the foregoing reasons, we REVERSE the district court's denial of Holloway's motion for j.n.o.v. and REMAND for the district court to enter the appropriate order.
 
 
 
 *
 The Honorable Charles W. Joiner, Senior United States District Judge for the Eastern District of Michigan, sitting by designation