916 F.2d 713
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Fred H. McCABE, Plaintiff-Appellee,
v.
CHAMPION INTERNATIONAL CORPORATION, Defendant-Appellant.
 No. 89-4021.
 United States Court of Appeals, Sixth Circuit.
 Oct. 18, 1990.
 
 Before KEITH and MILBURN, Circuit Judges, and ZATKOFF, District Judge*.
 PER CURIAM.
 
 
 1
 Defendant-appellant Champion International Corporation ("Champion") appeals from a judgment entered on a jury verdict for plaintiff-appellee Fred McCabe in this action alleging age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. Secs. 621-634. For the reasons that follow, we affirm.
 
 I.
 A.
 
 2
 McCabe commenced this action on March 10, 1987, alleging that Champion had violated the ADEA in terminating his employment. He set forth claims based on disparate treatment and disparate impact, and also claimed that Champion had acted in reckless disregard of the ADEA. The jury returned a verdict for McCabe on all three claims. McCabe was awarded $37,500 in compensatory damages by the jury, and the court awarded McCabe $37,500 in liquidated damages and $35,000 for front pay.
 
 
 3
 Champion filed a motion for judgment notwithstanding the verdict (JNOV) or, in the alternative, for a new trial. Champion's motion was denied by the district court on October 23, 1989. This timely appeal followed.
 
 B.
 
 4
 Plaintiff-appellee Fred McCabe began working at Champion in 1969. McCabe's employment was terminated on July 9, 1986, when McCabe was forty-nine years of age. During the last three years of his employment, McCabe was rated as "effective", and McCabe was never disciplined or reprimanded during his career at Champion.
 
 
 5
 McCabe was employed at Champion's "Knightsbridge" facility in Hamilton, Ohio, where he worked in the Business Systems Services (BSS) department, a sub-department of Champion's Management Information Services (MIS) department. The BSS department was broken up into six sub-departments, each headed by a manager. McCabe was one of a total of twenty-four employees assigned to a group headed by Fredrick "Fritz" Bazeley. Within the BSS department employees utilized a number of different computer languages including Cobol, JCL, Mantis and Nomad. Champion concedes that McCabe was proficient in Nomad. Additionally, McCabe's supervisors at Champion acknowledged that he was very skilled in the area of working with the persons who actually used the programs that he designed.
 
 
 6
 Sixteen of the twenty-four employees in Bazeley's group were assigned to a project known as "Champ." The record indicates that employees working on the Champ project needed to utilize the computer languages, Mantis, Cobol and JCL. Champion alleged that McCabe was not assigned to the Champ project because he did not know Mantis, had failed to obtain necessary training to learn JCL as recommended by his immediate supervisor, and had not used Cobol since 1975. McCabe testified, however, that during his career with Champion he had coded programs in Cobol and that he had also used JCL.
 
 
 7
 Instead of working on the Champ project, McCabe was assigned to two other projects, the "Cut-Size Report" and the "Quality Mill Control System." At trial, Champion presented testimony that McCabe's work on these two projects had been unsatisfactory, and that he did not complete work on the projects. McCabe countered this evidence by testifying that he did not understand the projects, and when he asked others with more experience to assist him, they too were unable to understand the projects enough to help him. Also, McCabe's counsel elicited testimony on cross-examination that indicated the projects were never finished because supervisors had been putting conflicting demands upon McCabe.
 
 
 8
 In 1984 Champion merged with St. Regis Corporation. In 1986 Champion began restructuring the MIS department. Gary Crawford, who headed the restructuring, created a chart which contained four groups of employees that would comprise the "pool" of employees to be terminated as a result of the restructuring. McCabe was placed in the fourth category on the chart by Bazeley. The fourth category was comprised of individuals who were initially identified by their managers as employees who possessed skills that the managers may not or did not need in the future. If McCabe had been removed from the chart either by his manager or another manager, he would not have been terminated; however, he was not removed from the chart.
 
 
 9
 Crawford basically instructed the managers who were placing employees on the charts to make a determination of what skills they would need in the future and to terminate accordingly. Crawford also orally informed managers not to use age, race or sex in any way in determining who should go on the chart. Of the twenty-four employees in Bazeley's group, ten were over the age of forty and fourteen were under the age of forty. Six of the ten employees over forty were selected for the pool, and two of the fourteen employees under forty were selected for the pool. The average age of the employees selected for the pool by Bazeley was 42.5. The average age for those he retained was 32.2.
 
 
 10
 Bazeley testified that he placed McCabe in the pool because McCabe did not use Cobol for many years and because McCabe had never learned the two other languages (Mantis and JCL) that were being utilized on the Champ project. Bazeley further testified that he did not retain any employees who had Nomad reporting skills. However, Bazeley admitted that Nancy Binne was retained and was doing "a little bit of work" involving Nomad. Additionally, he testified that two other employees, Angie O'Neil and Noel Day, also continued to do some Nomad work after the restructuring.
 
 
 11
 Bazeley further admitted that seven other employees who were retained would be spending at least fifty percent of their time on some kind of programming function, and admitted that McCabe had performed similar work while employed at Champion. Dale Kelley, McCabe's direct supervisor on the Cut-Size Report, gave McCabe the highest possible rating on his programming work, including database design, in 1986.
 
 
 12
 Crawford testified that after the restructuring, employees were still being trained in Nomad. Bazeley was ambivalent about whether or not at the time he terminated McCabe he knew that there would be any more Nomad reporting work.
 
 
 13
 Donald Marhefka, an employee of Champion, testified at trial that McCabe "could get up to snuff in five to ten days" in using the computer languages that he did not know. McCabe himself testified that he could begin work in Cobol using a manual and could become 100% proficient after only three months.
 
 
 14
 Bazeley's group was not reduced in size as a result of the restructuring. In fact, nine new employees were brought into Bazeley's group. Of these nine employees, eight were under the age of forty. J.A.Vol. 2, at 309. On cross-examination Bazeley testified that he had no explanation for this occurrence.
 
 
 15
 Nineteen MIS employees who were placed in the pool were eventually terminated. The age breakdown of the nineteen employees involuntarily terminated in the MIS department as a whole is as follows: twelve were over forty; five were between the ages of thirty and thirty-nine; and two were under twenty-nine years of age. Plaintiff's Exhibit 305. One hundred twenty-nine employees were involuntarily terminated at the Knightsbridge facility as a whole, with the age breakdown as follows: 67 percent were over forty; 17.85 percent were between the ages of thirty and thirty-nine; and 15.5 percent were twenty-nine or under. Plaintiff's Exhibit 299.
 
 
 16
 Champion's Equal Employment Opportunity (EEO) office in Stamford, Connecticut, contacted Crawford regarding the placement of McCabe and another employee into the pool. The EEO office warned Crawford that the placement of McCabe in the termination pool might be a violation of age discrimination laws. Crawford considered the process to be fair and reasonable, and, therefore, he never talked to Bazeley about his selection of McCabe for the pool or did anything further concerning McCabe's status.
 
 
 17
 The principal issues in this appeal are (1) that the district court should have granted Champion's motion for a directed verdict or its motion for a JNOV because McCabe failed to prove that his age was a determining factor in his termination; (2) the district court should have granted Champion's motion for a directed verdict or its motion for a JNOV because McCabe failed to prove that a specific employment practice had an adverse disparate impact on persons over forty and because McCabe failed to prove that Champion could still have met its legitimate business goals by using an alternative to the challenge practice that had less of an impact on those in the protected age group; (3) the district court should have permitted Champion's witness, Margaret Harter, to testify; (4) the district court should have excluded irrelevant and unfairly prejudicial statistical evidence offered by McCabe; and (5) the district court should have excluded the testimony of McCabe's witness, Russell Whitehill.
 
 II.
 
 18
 Under federal law, failure to grant a JNOV is reviewed de novo asking whether, viewing the evidence and reasonable inferences therefrom in the light most favorable to the nonmoving party and without considering the credibility of the witnesses or the weight of the evidence, the only reasonable conclusion is a verdict against the nonmovant. Erskine v. Consolidated Rail Corp., 814 F.2d 266, 269 (6th Cir.1987). "Judgment not withstanding the verdict is not proper unless the evidence is such that there can be but one reasonable conclusion as to the proper verdict. It should not be granted if there is a conflict in the evidence, and credibility of evidence is not to be considered in passing on a motion for judgment." Grimm v. Leinart, 705 F.2d 179, 181 n. 2 (6th Cir.1983), cert. denied, 465 U.S. 1066 (1984). "The directed verdict is proper only when by so viewing the evidence, there is 'a complete absence of pleading or proof on an issue or issues material to the cause of action or where there are no controverted issues of fact upon which reasonable men could differ.' " Grimm, 705 F.2d at 181. For a plaintiff to recover in an action brought under ADEA, the plaintiff must prove by direct or circumstantial evidence that he or she was a member of the protected class and that age was a determining factor in his or her employment termination. Blackwell v. Sun Elec. Corp., 696 F.2d 1176 (6th Cir.1983); Ackerman v. Diamond Shamrock Corp., 670 F.2d 66, 70 (6th Cir.1982); Laugesen v. Anaconda Co., 510 F.2d 307, 317 (6th Cir.1975).
 
 III.
 A.
 
 19
 The standards of proof set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248 (1981), generally apply to age discrimination cases. Nevertheless, we have warned against a mechanistic application of the McDonnell Douglas model and have adopted a case-by-case approach to age discrimination claims. Laugeson v. Anaconda Company, 510 F.2d 307, 312 (6th Cir.), cert. denied, 422 U.S. 1045 (1975); Sahadi v. Reynolds Chemical, 636 F.2d 1116, 1118 n. 3 (6th Cir.1980).
 
 
 20
 Under McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) a prima facie case of age discrimination is established where:
 
 
 21
 (1) the plaintiff is forty years of age or older;
 
 
 22
 (2) the plaintiff was subjected to adverse employment action;
 
 
 23
 (3) the plaintiff was qualified for the position; and
 
 
 24
 (4) the plaintiff was replaced by a younger person.
 
 
 25
 See Simpson v. Midland-Ross Corp., 823 F.2d 937, 941 (6th Cir.1987). Additionally, "[a]n ADEA plaintiff who has been terminated amidst a corporate reorganization carries a greater burden of supporting charges of discrimination than an employee who was not terminated for similar reasons." Id. at 941. In a reduction-in-force situation the age discrimination plaintiff must "come forward with additional direct, circumstantial or statistical evidence that age was a determining factor in his termination." Ridenour v. Lawson Co., 791 F.2d 52, 57 (6th Cir.1986); see Barnes v. Gencorp., Inc., 896 F.2d 1457, 1466 (6th Cir.1990).
 
 
 26
 Champion's argument that McCabe cannot establish a prima facie case of age discrimination because he was not replaced by a younger person is unpersuasive. We recognized in Barnes that a plaintiff in a true work force reduction situation cannot prove that he was replaced by a younger person. 896 F.2d at 1465. Champion in its brief argues that McCabe was not replaced at all, but that there was a lack of work in his area of expertise as a result of the restructuring. Appellant's Brief at 21. To establish a prima facie case under Barnes, the plaintiff only needs to come forward with statistical, direct or circumstantial evidence that he was singled out because of his age. Id. at 1466. We further recognized in Barnes that a plaintiff in a work force reduction situation can prove a prima facie case by showing that the employer made statements indicative of a discriminatory motive. Id.
 
 
 27
 Dale Kelley, a supervisor who was employed at Champion at the time of the trial, testified that Bazeley had told him that "he would prefer to have junior people as to senior people." J.A.Vol. 2, at 52. Kelley testified that although Bazeley did not use the term "younger people," perhaps that was what he meant, but that the statement required one to draw his own inference. Significantly, this was not an offhand remark as it was made at a "project status meeting" to some other project leaders. Id. Bazeley also admitted that he had expressed his opinion to other workers that young employees were a "tremendous benefit" to the company. Likewise, Bartley Reitz, MIS director, testified that he felt college recruits had "very high" energy levels and were "very open to learning new techniques." J.A.Vol. 1, at 340-341. A jury could reasonably have concluded that these statements made by Bazeley and Reitz were indicative of a discriminatory motive.
 
 
 28
 McCabe also came forward with other circumstantial evidence of age discrimination. Russell Whitehill, age forty-five, and Donald Marhefka, age fifty-three, who were both terminated during the restructuring, testified on behalf of McCabe. Whitehill testified that his position was not eliminated, but that he was replaced by a younger person, Randy Wade, age thirty-seven. Marhefka testified that after he was terminated, Gene McCormick, in his twenties, was retained to perform the same kind of work that he, Marhefka, had been doing. Moreover, Raymond Boone testified that MIS director Bartley Reitz promoted younger employees and that "none of the older ones [employees] that had been there for many years were getting the opportunity to move into management." J.A.Vol. 1, at 343.
 
 
 29
 Champion argues that Bazeley's statement about "junior employees" cannot serve as a basis for McCabe's prima facie case because the statement was ambiguous. Champion relies on Laugesen v. Anaconda Co., 510 F.2d 307 (6th Cir.1975) for this argument. However, Laugesen stands for the exact opposite of the proposition for which Champion cites it. Laugesen held that an ambiguous statement creates a dispute of fact which is properly to be decided by the jury. Id. at 313.
 
 
 30
 Champion makes several arguments directed at McCabe's statistical evidence. Contrary to Champion's argument, there is no requirement that statistical evidence be supported by expert testimony. See EEOC v. Pet, Inc., 543 F.Supp. 911, 914 (M.D.Ala.1982), aff'd, 719 F.2d 383 (11th Cir.1983).
 
 
 31
 Champion argues that all of McCabe's exhibits which rely on samples of less than thirty are unreliable and deceptive. There is no basis in law for this assertion. In fact, decisions from this circuit have recognized that in the employment situation it is often difficult to come forward with very large samples. In EEOC v. New York Times Broadcasting Services, 542 F.2d 356, 360 (6th Cir.1976), we relied on a statistic drawn from a sample of five employee positions. We also recognized that a statement indicating discriminatory intent can bolster statistical evidence. Id. There was such a statement in this case by Bazeley.
 
 
 32
 Although in Simpson we did recognize that a sample of seventeen employees was "suspect," that case is distinguishable. 823 F.2d at 943. We twice noted in that case that the plaintiff had come forward with nothing other than statistical evidence. Id. at 933, 944. There was no other circumstantial evidence such as discriminatory comments made by managers, or statistics relying on larger sample sizes, as is in this case. We also note that plaintiff's exhibit 298, which shows the selections of the MIS managers for the pool, contains forty employees and thus, according to the standard set forth by Champion, is not deceptive or unreliable.
 
 
 33
 Champion argues that seven of the exhibits put forward by McCabe were "confusing" and "deceptive" because they compare age bands of different sizes. There is no authority to support this proposition. In this respect, Champion has done no more than raise "theoretical objections" to these exhibits. Barnes recognizes that "theoretical objections" will not suffice to prove that an exhibit could not be reasonably relied on to prove discrimination. Barnes, 896 F.2d at 1467.
 
 
 34
 Champion is correct in pointing out that three of McCabe's exhibits, 143, 222 and 319, are not placed in their proper context and, therefore, may lack probative value under Simpson. However, there were seventeen other exhibits which the jury could have relied on in finding that McCabe had established a prima facie case of age discrimination.
 
 
 35
 Champion is incorrect in asserting that McCabe did not come forward with enough evidence to establish a prima facie case of age discrimination. Considering the fact that Bazeley, the manager who selected McCabe for termination, made a statement at a supervisory meeting which the jury could reasonably have concluded indicated a discriminatory intent, Bazeley's statement could support McCabe's prima facie case. Additionally, McCabe came forward with numerous statistical exhibits, the testimony of other workers within the protected class concerning the circumstances of their termination, and evidence that two managers, Reitz and Bazeley, had expressed a preference for younger employees. Moreover, there was the evidence that Champion ignored a warning of age discrimination regarding McCabe from its own EEO office. Therefore, we conclude that a jury could reasonably have found that McCabe established a prima facie case of age discrimination.
 
 B.
 
 36
 We now turn to Champion's argument that McCabe did not prove that the reasons asserted by Champion for terminating him were pretextual. In this case it is clear that a jury could reasonably have concluded that the reasons asserted by Champion for terminating McCabe's employment were pretextual under either of the three approaches set out in Chappell v. GTE Products Corp., 803 F.2d 261, 266 (6th Cir.1986), cert. denied, 480 U.S. 919 (1987). Champion asserts that McCabe was chosen for the termination pool because his performance on the Cut-Size Report was inadequate, because the Nomad work at which McCabe was proficient was "drying up," and because McCabe lacked proficiency in several computer languages that would be necessary for an employee to utilize if that employee were to work on the remaining project left in Bazeley's group, i.e., the Champ project.
 
 
 37
 Based on the evidence McCabe put forth at trial to rebut these reasons, a jury could have reasonably concluded that the reasons were pretextual. There was testimony by McCabe's supervisors that his performance on the Cut-Size Report was due to conflicting demands placed upon him. McCabe himself also testified that the people he consulted with, who had even greater experience, were unable to understand aspects of the report. Four witnesses at trial testified that McCabe's data base design skills were good, and McCabe testified that design and analysis are basically the same between all computers and software. Furthermore, Bazeley, who selected McCabe for the pool, rated McCabe's overall performance as "effective" in 1986.
 
 
 38
 A Champion employee, Marhefka, testified that McCabe could quickly learn the skills necessary to work on the Champ project. There was also evidence that although Champion claimed that the Nomad work was "drying up," other younger employees were retained to do at least a minimal amount of Nomad work. Further, Bazeley testified that at the time of McCabe's termination he, Bazeley, was not certain that there would be no more work involving Nomad.
 
 
 39
 Viewing the evidence and the reasonable inferences therefrom in the light most favorable to the plaintiff, we hold that the jury could reasonably find that the plaintiff's age was a determining factor in the termination of his employment. As seen from the foregoing, sufficient evidence was presented to the jury to support plaintiff's claim of disparate treatment under ADEA.
 
 C.
 
 40
 Champion argues that McCabe failed to prove that a specific Champion employment practice had an adverse disparate impact on persons over forty, and that McCabe failed to prove that Champion could still have met its legitimate business goals by using an alternative to the challenged practice that had less of an impact on employees within the protected group.
 
 
 41
 To prevail on a disparate impact claim, the plaintiff has the burden of establishing the following: (1) plaintiff must identify the specific employment practice that is challenged, Wards Cove Packing Co., v. Antonio, 109 S.Ct. 2115, 2124 (1989) (citing Watson v. Ft. Worth Bank & Trust, 108 S.Ct. 2777, 2788 (1988)); (2) plaintiff must offer statistical evidence which shows a causal link between the specific employment practice and the demonstrated adverse impact, id.; and (3) if plaintiff makes out such a prima facie case, and defendant can produce evidence that its employment practice was based on legitimate reasons, plaintiff must come forward with alternatives to defendant's practices that reduce the disparate impact. Id. at 2125, 2126. Furthermore, under Watson v. Ft. Worth Bank & Trust, 108 S.Ct. 2777, 2786 (1988), a plaintiff can prevail on a disparate impact claim where subjective decisionmaking is put forth as the challenged employment practice.
 
 
 42
 McCabe alleged numerous specific employment practices from which the jury could have inferred an unlawful discriminatory impact. There was evidence at trial that the restructuring plan designed by Crawford delegated to department managers the discretion to make subjective decisions regarding which employee should be terminated. There was evidence that the managers operated without any objective guidelines. There was also evidence from which the jury could infer that the "pool" method of carrying out the restructuring had a discriminatory impact on those within the protected class. As a result of the "pool" method, McCabe's qualifications were only compared with twenty-four other employees in his department. At trial McCabe also challenged the necessity of terminating employees rather than training them or giving them temporary work.
 
 
 43
 Champion argues that McCabe failed to prove that other means existed by which Champion could have accomplished its legitimate goals with less of an impact on persons over forty. A jury could have reasonably concluded that McCabe came forward with evidence that other means existed by which Champion could have accomplished its legitimate business goals with less of an impact on persons over forty. Champion's own expert, James Scott, testified at trial that the General Electric Company applied written guidelines and criteria when it underwent a restructuring process. Scott further testified that there were other ways by which Champion could have restructured the MIS department; viz., hiring freeze, using length of service as a factor, and assigning employees designated for layoff to temporary jobs until more work arose. Most notably, Crawford testified that Champion's current policy (at the time of trial) was to assign employees designated for layoff to temporary jobs until more work arose. This policy was not in effect when McCabe was terminated.
 
 
 44
 Champion argues that McCabe's statistics did not demonstrate a disparate impact on employees aged forty and over. Champion points to three of McCabe's exhibits and argues that they cannot support a disparate impact claim because they proceed on "subgrouping" analysis. See Lowe v. Commack Union Free School Dist., 886 F.2d 1364, 1373 (2d Cir.1989), cert. denied, 110 S.Ct. 1470 (1990). The exhibits do not involve "subgrouping" analysis. Subgrouping analysis occurs when, instead of comparing protected groups against unprotected groups, one compares statistics as between protected groups. Further, there were seventeen other exhibits on which a disparate impact claim could be based.
 
 D.
 
 45
 We next consider Champion's argument that it should have been granted a directed verdict or a JNOV on the claim asserting that it had willfully violated the ADEA. Champion's argument consists of two parts. First, Champion argues that no witness offered any testimony from which a reasonable person could have concluded that Champion acted recklessly.[1] Second, Champion argues that the jury instructions given by the district judge regarding liquidated damages were confusing and may have misled the jury.
 
 
 46
 There was testimony at trial that Crawford, the individual in charge of the restructuring of MIS, proceeded without consulting Champion's Equal Employment Opportunity (EEO) office. There was also testimony that although Champion's EEO office warned Crawford of the possible age discrimination problems regarding McCabe's termination, Crawford did not heed these warnings, and took no steps that in any manner addressed the problem. Therefore, Champion's argument that no witness offered any testimony from which a reasonable person could have concluded that Champion acted recklessly is unfounded.
 
 
 47
 As to Champion's argument regarding the district court's instructions to the jury on liquidated damages, we initially note that Champion failed to make any objections to these instructions at trial. Even if Champion had objected, we would still hold that "taken as a whole" the instructions "adequately inform[ed] the jury of the relevant considerations and provide[d] a basis in law for aiding the jury in reaching its determination." Blackwell v. Sun Elec. Corp., 696 F.2d 1176, 1181 (6th Cir.1983).
 
 E.
 
 48
 Finally, we consider the errors claimed as to the district court's evidentiary rulings. We review evidentiary rulings under an abuse of discretion standard. Apponi v. Sunshine Biscuits, Inc., 809 F.2d 1210, 1218 (6th Cir.), cert. denied, 484 U.S. 820 (1987). Champion argues that the district court erred (1) in excluding the testimony of Champion's proffered rebuttal witness, Peggy Harter; (2) in admitting statistical evidence that was irrelevant to McCabe's case and prejudicial to Champion; and (3) in allowing Russell Whitehill to testify.
 
 
 49
 The district court did not abuse its discretion in sustaining McCabe's objection to the testimony of Peggy Harter based on surprise and prejudice. Although Champion claims that it did not know that Harter's testimony would be needed to impeach McCabe until he testified at trial that he was "under contract" with Anheuser-Busch, at trial Champion claimed Harter's testimony was also offered to prove that McCabe's work under Harter was "unsatisfactory." Champion knew about Harter's testimony, at least with respect to her opinion that McCabe's work was "unsatisfactory," six weeks before trial. Champion could have reasonably anticipated that Harter's testimony that McCabe's work was "unsatisfactory" would be needed at the trial; therefore, it should have added Harter's name to the witness list.
 
 
 50
 Champion next argues that exhibits 143, 260 and 299 were irrelevant and prejudicial. We note that Champion failed to object to the admission of exhibit 260 at trial. Even if Champion had objected to exhibit 260, the district court would not have abused its discretion in admitting exhibit 260. Furthermore, there was no abuse of discretion in admitting exhibits 143 and 299 because they were relevant to show a pattern and practice of discrimination at Champion's Knightsbridge facility as a whole.
 
 
 51
 Lastly, Champion argues that the district court erred in permitting Russell Whitehill to testify. Whitehill testified that after he was terminated due to the July 1986 restructuring, his position was filled by a younger employee (Wade, age 37). Champion asserts that the probative value of Whitehill's testimony was substantially outweighed by the prejudice of the testimony to Champion and because of the tendency of such testimony to confuse the jury by focusing its attention on an unrelated charge. Champion bases this argument on Schrand v. Federal Pacific Elec. Co., 851 F.2d 152 (6th Cir.1988). As the district court correctly pointed out in overruling Champion's objection, Schrand is distinguishable from the case at hand. In Schrand the plaintiff was not offering the testimony in an attempt to establish a pattern and practice case, and the two employees whose testimony was offered in that case were "working in places far from the plaintiff's place of employment, under different supervisors." Id. at 156. Because Schrand is distinguishable and because the testimony of Whitehill was probative on the issue of whether or not Champion's employment practices, which were implemented during the restructuring, had an adverse impact on those over forty, the district court did not abuse its discretion in allowing him to testify.
 
 III.
 
 52
 Accordingly, for the reasons stated, the judgment of the district court is AFFIRMED.
 
 
 
 *
 Honorable Lawrence P. Zatkoff, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 A willful violation of ADEA exists where "[t]he employer either knew or showed reckless disregard for whether its conduct was prohibited by the ADEA." Transworld Airlines, Inc. v. Thurston, 469 U.S. 111, 128 (1985)