927 F.2d 603
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Frank CAMPBELL, Plaintiff-Appellee,
v.
RUST ENGINEERING CO., INC., Defendant-Appellant.
 No. 90-5679.
 United States Court of Appeals, Sixth Circuit.
 March 5, 1991.
 
 On Appeal from the United States District Court for the Eastern District of Tennessee, 88-60924, Murriam (M), J.
 F.D.Tenn.
 AFFIRMED IN PART, REVERSED AND REMANDED IN PART.
 Before RALPH B. GUY, Jr., and BOGGS, Circuit Judges; and LIVELY, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiff, Frank Campbell, brought this action pursuant to the Age Discrimination in Employment Act (ADEA), 29 U.S.C. Sec. 621, et seq., and Tennessee's Human Rights Act, Tenn.Code Ann. Secs. 4-21-101, et seq. Plaintiff alleged that his former employer, Rust Engineering Company, Inc. (Rust), discharged him because of his age. Following a trial before a magistrate, the jury returned a verdict for the plaintiff and awarded damages. Defendant Rust appealed the judgment, and asserts the following claims: (1) the magistrate erred when het denied defendant's motion for a judgment notwithstanding the verdict (JNOV) with regard to both of plaintiff's claims; (2) the magistrate erred in denying defendant's motion for JNOV with regard to plaintiff's claim for liquidated damages under the ADEA; (3) the magistrate erred when he submitted the question of front pay to the jury, rather than retaining it as a question for the court; (4) the magistrate erred when he denied defendant's motion for a new trial on the basis that the award of front pay was excessive or, in the alternative, erred in not ordering a remittitur reducing this damage award; (5) the magistrate erred when he admitted into evidence a statement made by plaintiff's supervisor; and (6) the magistrate erred when he denied defendant's motion for a JNOV on plaintiff's claim under Tennessee law and also when he refused to grant defendant's motion for a new trial on this issue.
 
 
 2
 With the exception of its claim relative to the pendent state claim, we find defendant's allegation of error to be without merit and affirm. We find the jury's award for embarrassment and humiliation, pursuant to the Tennessee Human Rights Act, excessive and, accordingly, reverse and remand on this issue.
 
 I. Facts
 
 3
 Rust is engaged in the engineering and construction business. Rust does contract work for the Department of Energy (DOE) at Oak Ridge, Tennessee. Although Rust has had construction and maintenance contracts for DOE since the late 1960s, Rust's contract, at the time of trial, was due to expire in September of 1990. Rust submitted a bid to continue its work for the DOE along with several other firms. At the time of trial, the DOE had not awarded any contracts for the Oak Ridge facility.
 
 
 4
 In addition to the uncertainty as to whether Rust would be able to continue to work for the DOE at its Oak Ridge facility, the total volume of construction work at the Oak Ridge facility decreased substantially in the three years prior to the trial. The volume of work decreased from $98 million in 1987 to $67 million in 1989; in 1990, the company projected a further decrease to $53 million. Rust experienced a corresponding reduction in work force. In 1987, Rust had 1500 craft employees at Oak Ridge. By 1989, this figure was reduced to 725. The salaried workforce also decreased from 221 in 1988 to 155 in 1989. The department in which the plaintiff worked experienced force reductions of 25 percent.
 
 
 5
 Campbell, who was born in 1932, was first employed as a laborer for Rust in 1977. He then worked elsewhere for a short time but was rehired by Rust in April of 1979. Over the next nine years, the plaintiff worked for Rust in Oak Ridge, Tennessee, as a time-keeper; a key punch operator; and, finally, as an administrative assistant. On July 29, 1988, the plaintiff was laid off. He was 55 years old.
 
 
 6
 The plaintiff worked in Rust's financial management department, which was made up of six sections. In 1988, Les Johnson headed the entire department. The plaintiff held several clerical positions in the financial management department. From April 1979 to April 1982, he worked as a time keeper in the payroll section. From April 1982 to April 1985, the plaintiff worked as a keypunch operator in the computer section. From 1985 until his layoff in July of 1988, the plaintiff was an administrative assistant in the material control section. In his final position, the plaintiff was supervised by two section managers, Tom McWhorter and Carl Morris, and by a lower level supervisor, Jim Lahman.
 
 
 7
 As a result of the decrease in the volume of business, the company decided to lay off employees. In July of 1988, department head Les Johnson decided that three administrative assistants in the financial management department would have to be laid off. The candidates for layoff included Gary Harris, age 41; Allen Byrd, age 24; Frank Campbell, age 55; David Joyce, age 31; Dan Miles, age 23; and Gary Underwood, age 27. The employees ultimately selected for layoff were David Joyce, a summer hire; Gary Harris, who had been employed full-time by the company only since April 1988; and the plaintiff. Harris was recalled for work two months later as a mailroom clerk.
 
 
 8
 Les Johnson, responsible for making the ultimate decision as to who was to be laid off in the financial management section, chose between Allen Byrd and plaintiff Campbell. Allen Byrd, age 24, was hired in 1984 and transferred into Campbell's department in January 1988. The company maintains that "Johnson concluded that Byrd was superior from both the standpoint of his attitude toward[ ] work and his versatility."
 
 
 9
 Morris, one of plaintiff's supervisors, met with the plaintiff and Jim Lahman, another member of the material control section, in late June or early July, and told them that Morris's boss, Les Johnson, had decided to pull plaintiff and Lahman off their regular jobs to do a special bar coding project, a short-term project. The plaintiff left that meeting but returned a few minutes later and spoke to Morris. The plaintiff recounted this conversation as follows:
 
 
 10
 And that's when I got to thinking about it and went back to talk to Mr. Morris by hisself [sic]. And that's when Mr. Morris and I had a discussion about whether the change was permanent or whether it was temporary, and he said that he and Les [Les Johnson] had made a decision to go with Alan Byrd, the younger boy, to free me to go with Jim Lahman to do the bar code.
 
 
 11
 And I asked him if that was going to be true after the bar code was established, and he said as far as he knew or was [sic], that he didn't know what was down the road.
 
 
 12
 (App. at 41). At another point during the trial, the plaintiff testified that Morris told him at this meeting that Morris and Johnson had "made a decision to go with Byrd as a younger person on my job." (Id.).
 
 
 13
 Prior to working on the bar code project, the plaintiff was instructed to teach Byrd how to perform the plaintiff's work functions. As a result, the plaintiff concludes that Byrd replaced him. Rust, however, argues that its decision to lay off employees took place after the decision to have Campbell work on the special bar coding project. Campbell was laid off on July 29, 1988, one month after his assignment to the bar coding project.
 
 
 14
 II. Admissibility of Plaintiff's Conversation with Morris
 
 
 15
 Defendant sets forth several arguments to support its claim that the plaintiff's restatement of his conversation with his supervisor, Morris, should not have been admitted into evidence. We must affirm the magistrate's evidentiary ruling unless the magistrate abused his discretion. United States v. Mahar, 801 F.2d 1477, 1495 (6th Cir.1986).
 
 
 16
 First, defendant argues that Morris's statement was merely a stray remark and, thus, would not support a jury's inference of age discrimination. The defendant cites Gagne v. Northwestern National Insurance Co., 881 F.2d 309 (6th Cir.1989), to support its contention. In Gagne, a supervisor made an isolated remark during a meeting attended by a number of employees that he " 'needed younger blood.' " Id. at 314. The court held that the "isolated and ambiguous" nature of the statement made it " 'too abstract, in addition to being irrelevant and prejudicial, to support a finding of age discrimination.' " Id. at 314 (quoting Chappell v. GTE Prods. Corp., 803 F.2d 261, 268 n. 2 (6th Cir.1987)). Unlike Gagne, in the current case, Morris, the plaintiff's supervisor, made reference to age in a one-on-one discussion concerning plaintiff's particular reassignment and replacement. Thus, because the circumstances are not analogous to Gagne, we cannot hold that the magistrate abused his discretion in allowing the alleged conversation to be admitted into evidence.
 
 
 17
 Defendant also argues that because plaintiff inconsistently recounted the conversation with Morris, it would be impossible for the jury "to reliably determine what the statement actually was." On a motion for a JNOV, however, the evidence is considered in the light most favorable to the non-moving party, which in this case is plaintiff Campbell. Variations in Campbell's testimony are considered by the jury when assessing Campbell's credibility. The magistrate, however, in deciding whether to grant a JNOV, could not consider the issue of credibility.
 
 
 18
 Finally, defendant asserts that because no evidence supported the conclusion that Morris had any authority to make layoff decisions, Morris's "age conscious" statement to plaintiff Campbell should have been excluded. Rust cites Schrand v. Federal Pacific Electric Co., 851 F.2d 152 (6th Cir.1988), for support. In Schrand, we concluded that certain statements made to non-plaintiffs should have been excluded from evidence because "there was no evidence from which the alleged statements ... could logically or reasonably be tied to the decision to terminate [the plaintiff]." Id. at 156. In contrast, however, Campbell's conversation with Morris directly concerned Campbell's employment status with Rust. Thus, Schrand is not controlling. Additionally, Morris was Campbell's direct supervisor and had significant input into the decision as to who should be released.
 
 III. Denial of Defendant's Motion for JNOV
 
 19
 Rust also argues that the magistrate erred in denying Rust's motion for JNOV. Rust asserts that the plaintiff failed to present a prima facie case that he was discharged on the basis of age discrimination and that therefore a JNOV should have been granted.
 
 
 20
 The question to be addressed in reviewing a district court's denial of a motion for JNOV or for a directed verdict is whether the evidence, when viewed in the light most favorable to the nonmoving party, raises any material questions of fact for the jury. This court must not pass on the credibility of witnesses, weigh the evidence, or substitute its judgment for that of the factfinder. Agristor Leasing v. A.O. Smith Harvestore Prods., Inc., 869 F.2d 264, 268 (6th Cir.1989); Frost v. Hawkins County Bd. of Educ., 851 F.2d 822, 826 (6th Cir.), cert. denied, 109 S.Ct. 529 (1988).
 
 
 21
 This court has previously addressed the issue of the amount of evidence needed to establish a prima facie case of age discrimination. See McMahon v. Libbey-Owens-Ford Co., 870 F.2d 1073, 1076 (6th Cir.1989) (citing cases). We have decided not to adopt rigid guidelines for establishing prima facie cases and instead have opted for a case by case approach. We have held, however, "in cases of corporate reorganization[,] a plaintiff must come forward with 'additional direct, circumstantial, or statistical evidence that age was a factor in his termination....' " Simpson v. Midland-Ross Corp., 823 F.2d 937, 941 (6th Cir.1987) (citing Ridenour v. Lawson Co., 791 F.2d 52 (6th Cir.1986)). Plaintiff's testimony regarding his conversation with Morris and the circumstances surrounding his termination provide such additional support.
 
 
 22
 The evidence presented to the jury included the statement plaintiff's supervisor made, which referred to selecting his replacement because he was the younger man; Rust's assignment of plaintiff to the bar coding project, a job of limited duration, less than one month before plaintiff was laid off; Rust's request that the plaintiff train Byrd, a 24-year old, to perform plaintiff's permanent job functions; and Rust's subsequent layoffs in plaintiff's department only of men in the protected age group and a temporary employee. Plaintiff's theory of the case, i.e., that Rust decided to lay him off and replace him with another, younger man prior to assigning him to the special bar coding project, is not unsupported. A rational jury, viewing the evidence in the light most favorable to the plaintiff, could have found for the plaintiff.
 
 IV. Damages
 
 23
 The defendant disputes the applicability or amount of several of the damage awards. We will consider each disputed element of damages in turn.
 
 Liquidated Damages
 
 24
 Section 7(b) of the ADEA, 29 U.S.C. Sec. 626(b), provides that "liquidated damages shall be payable only in cases of willful violations." Although the ADEA refers to the Fair Labor Standards Act for defining "liquidated damages," the ADEA does not provide a definition of "willful."
 
 
 25
 In Schrand, we held that a "defendant's conduct [is] willful only if age was the predominant factor in the decision to terminate the plaintiff." 851 F.2d at 158. Viewing the evidence in the light most favorable to Campbell, we cannot conclude that the district court committed reversible error in denying the JNOV motion on the willfulness issue. There was evidence from which the jury could conclude that age was the predominant factor in Rust's decision to terminate Campbell.
 
 Front Pay
 
 26
 The jury awarded the plaintiff $65,370 in front pay. The defendant, however, argues that the court should not have submitted the front pay issue to the jury. In Fite v. First Tennessee Product Credit Ass'n, 861 F.2d 884 (6th Cir.1988), we held that it was not an abuse of discretion for the court to allow the jury to award front pay. Id. at 892.
 
 
 27
 Rust further argues that the trial court somehow felt it had no discretion because Fite was the controlling authority. Since Fite makes it clear that whether the issue of front pay goes to the jury is discretionary with the trial judge, we reject Rust's contention that the magistrate thought he had to make front pay a jury issue.
 
 
 28
 We also find defendant's claim that the jury's award of front pay was excessive to be without merit. Defendant argues that the award was necessarily speculative and, as a result, excessive due to the uncertainties confronting Rust's operation at Oak Ridge and the difficulty in projecting the length of the plaintiff's employment with Rust. We disagree. Although Rust had not yet secured another contract at the DOE's Oak Ridge facility, Rust had had a contract with the DOE since the 1960s. Thus, a jury could have reasonably assumed that Rust would continue to employ people in Oak Ridge. Also, because the plaintiff had worked for the defendant for nine years, it was reasonable for them to conclude that the plaintiff would continue to work for Rust. "[A] jury verdict will not be set aside or reduced as excessive unless it is beyond the maximum damages that the jury reasonably could find to be compensatory for a party's loss." Green v. Francis, 705 F.2d 846, 850 (6th Cir.1983).
 
 Damages for Tennessee State Claim
 
 29
 Tennessee Code Annotated Sec. 4-21-311 provides that anyone injured by a violation of the Tennessee Human Rights Act may bring an action "to recover the actual damages sustained by him or her[.]" This section was amended in 1989 to provide that "[i]n addition to the remedies set forth in this section, all remedies described in Sec. 4-21-306 shall be available in any such lawsuit." Among the remedies provided by Tenn.Code Ann. Sec. 4-21-306 is "[p]ayment to the complainant of damages for an injury, including humiliation and embarrassment, caused by the discriminatory practice[.]" The jury awarded $68,897 for plaintiff's embarrassment and humiliation. The evidence used to support the jury's award is plaintiff's testimony that the layoff "hurt me quite a bit" and that he was embarrassed whenever he saw Rust employees with whom he had formerly worked.
 
 
 30
 Under Tennessee law "the review [of damage awards] in the Court of Appeals is subject to the rule that if there is any material evidence to support the award, it should not disturbed." Ellis v. White Freightliner Corp., 603 S.W.2d 125, 129 (1980). Although Tennessee's standard for reducing damages is restrictive, we believe the trial court abused its discretion when it held that the award was "within the limits of a reasonable range." (App. at 49). Plaintiff suffered no aggravated injuries as a result of his layoff. Rather, the injuries he sustained were merely those normally associated with losing a job, i.e., overall disappointment about not being employed. The award of damages for embarrassment and humiliation, in the absence of aggravating circumstances, is excessive, particularly given the generous front pay award by the jury. This issue is remanded to the district court with instructions to order a remittitur reducing the amount of damages under this claim to $10,000. In the event plaintiff refuses to make the remittitur, a new trial is ordered on the issue of damages only under the Tennessee cause of action. At the new trial, the jury is to be made aware of the amounts that plaintiff has already been awarded in this case.
 
 
 31
 AFFIRMED IN PART, REVERSED AND REMANDED IN PART.