62 F.3d 1417
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Nancy ANDERSON, Plaintiff-Appellant,
v.
PREMIER INDUSTRIAL CORP., Defendant-Appellee.
 No. 94-3454.
 United States Court of Appeals, Sixth Circuit.
 Aug. 7, 1995.
 
 Before: JONES, GUY, and BOGGS, Circuit Judges.
 PER CURIAM.
 
 
 1
 Nancy Anderson appeals from the district court's order granting a motion by Premier Industrial Corporation (Premier) for summary judgment. She raised federal sex and age discrimination counts against Premier, for failing to promote her and for dismissing her. She also raised Ohio age and sex discrimination, Ohio breach of contract, and Ohio promissory estoppel claims. The district court granted summary judgment for Premier on Anderson's federal and state law claims, and we affirm.
 
 
 2
 * Premier distributes and manufactures electronic and industrial products. Anderson began working at Premier in 1969, and was promoted to the position of Business Systems Leader (BSL) in 1982. She held that job until she was fired in 1991, at age 56.
 
 
 3
 In 1980, she applied for the job of Director of Systems Development, but was told she needed more experience to qualify. In 1986, she was assigned to work in Europe. She initially was only to stay there two years, but Premier asked her to stay an additional 1 1/2 years. She objected at first, but ultimately agreed to stay.
 
 
 4
 Anderson returned to Premier's Cleveland office in 1989. At that time, there were six BSLs working in her department. She was the only woman, was the oldest, and had the most experience at Premier. However, four of the other BSLs managed the four operational teams at Premier. "Because all four teams were being satisfactorily managed by their respective Business Systems Leaders, there were no open Business Systems Leader positions for Anderson.... Therefore, Anderson was assigned minor assignments until a longer-term position could be found for her." Baskind Aff. J.A. at 148-49. The only BSLs not in charge of an operational team when Anderson returned were Anderson and Robert Berke. Anderson stated that she was concerned about the stability of her position when she returned from Europe, but that the Vice- President of her division, William Baskind, told her that Premier had plenty of work and that her job security was not something she needed to worry about. Anderson Aff., J.A. at 181; Anderson Depo., J.A. at 188.
 
 
 5
 In 1990, the director of Anderson's division, and the manager of these four teams, Lillian Drimmer, to whom Anderson reported, was reassigned due to poor performance. Instead of promoting from within, Premier sought someone from outside the business, even though this was the position Anderson applied for in 1980. Management determined that the person they needed should be more qualified than Drimmer, (and implicitly more qualified than the people Drimmer supervised), and so conducted an outside search. Employees within Premier were not notified of the job opening. Anderson eventually learned of the vacancy, applied for it, but was never contacted about her application. Instead, Premier hired someone from outside the company, Thomas Wojnarowski.[1]
 
 
 6
 In November 1990, Premier created the Strategic Planning group, with Drimmer in charge, staffed by Anderson and Robert Berke. Berke was to join the new group only after he completed a project he had been assigned previously. The group's purpose was to locate and assess the feasibility of future computer system products. However, in January 1991, Baskind decided to eliminate this group, as part of a Reduction in Force (RIF), after being ordered to find ways to cut costs. Baskind stated that he had four reasons for eliminating the group: (1) the recession; (2) the company's reduced emphasis on forward-looking strategic planning; (3) Drimmer's inability to locate and propose strategic planning projects, given (1) and (2); (4) Baskind's inability to justify the group given these circumstances. Baskind Aff., J.A. at 153-54.
 
 
 7
 Baskind terminated Drimmer and Anderson on April 17, 1991. Berke was not terminated.[2] Premier staff stated that they tried to find positions for Anderson and Drimmer, but could not, so the only alternative was to terminate both of them. Baskind Aff., J.A. at 154-55; Brunskill Aff., J.A. at 159. Baskind stated that Premier did not have a policy that would allow it to "bump" another BSL who was performing satisfactorily, by placing Anderson in that job and firing the incumbent. Baskind Depo, J.A. at 234.
 
 
 8
 Anderson filed her amended complaint October 21, 1992, arguing that Premier discriminated against her in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. Sec. 626, and of Title VII of the Civil Rights Act of 1964, including its amendments in 1991, 42 U.S.C. Sec. 2000e. She also claimed that Premier violated Ohio Rev. Code Sec. 4112.02(A)[3] by discriminating against her based on her sex and age, breached its employment contract with her, and was liable to her under a promissory estoppel theory.
 
 
 9
 The district court granted Premier's motion for summary judgment. The court noted that Anderson bore the burden of establishing a prima facie claim under McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).[4] The district court found that Anderson failed to state a prima facie claim because she did not produce facts to show that a similarly situated person was treated differently, and did not produce "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." Opinion, J.A. at 463. The district court stated that, while Anderson claimed Berke was a similarly situated employee, but younger than Anderson and male, Premier demonstrated that his assignment to the Strategic Planning team would only have taken effect after he finished another project. Since this never occurred, Berke was not similarly situated to Anderson.
 
 
 10
 The court also found that Anderson could not claim that the other BSLs were similarly situated, because they were all "operation team leaders" who had job functions different from hers, although they shared the same title as Anderson. Although Anderson had been an operation team leader in Europe, she was not an operation team leader at the time she was fired. The court also found that Anderson's "statistical evidence" did not provide sufficiently compelling evidence to establish a prima facie discrimination claim.
 
 
 11
 The court also rejected Anderson's claim that Premier discriminated against her by failing to promote her instead of hiring Wojnarowski. It found that Anderson produced no operative facts to show that Premier discriminated against Anderson when it hired Wojnarowski.
 
 
 12
 The court also rejected Anderson's breach of contract claim, finding that she had signed a contract providing that Premier would give 14 days notice before terminating her, and that she was fired on April 17, 1991, yet continued to receive full pay and benefits to April 30, full pay until August 7, 1991, and half-pay through November 27, 1991. The court also held that Anderson could not rely on statements made in her employee handbook, because the handbook expressly stated that it was not a contract, and that the oral representations she raised were not sufficiently specific to create a contract, or to support her promissory estoppel claim.
 
 II
 
 13
 This court reviews de novo a decision granting summary judgment. Storer Communications, Inc. v. National Ass'n of Broadcast Employees and Technicians, 854 F.2d 144, 146 (6th Cir. 1988). Summary judgment is appropriate when there is no genuine issue of material fact and as a matter of law the moving party is entitled to judgment. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). Failure of proof concerning an essential element of a plaintiff's case "necessarily renders all other facts immaterial." Id. at 323.
 
 
 14
 To survive summary judgment, in the absence of direct proof of discrimination, Anderson must produce evidence to make a prima facie discrimination case under the four-part McDonnell Douglas test. McDonnell Douglas, 411 U.S. at 792; see also Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981) (sex discrimination); Gagne v. Northwestern Nat'l Ins. Co., 881 F.2d 309, 313 (6th Cir. 1989) (age discrimination).
 
 
 15
 Employees dismissed in a RIF cannot demonstrate facts supporting the fourth part of the McDonnell Douglas test, because they have not been replaced. In this situation, the employee must produce "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." Barnes, 896 F.2d at 1465; see also Ridenour v. Lawson Co., 791 F.2d 52, 57 (6th Cir. 1986). The Barnes court noted that a RIF plaintiff could state a prima facie claim by showing that he or she "possessed qualifications superior to those of a younger co-worker working in the same position" or "could show that the employer made statements indicative of a discriminatory motive." Id. at 1466.
 
 
 16
 Anderson argues first that there is an issue of whether Premier actually had a RIF, because the record lacked evidence of economic necessity in Anderson's firing. She claims that in other RIF cases, the employer produced evidence that it suffered from severe economic difficulties, citing Hawley v. Dresser Indus., 958 F.2d 720, 722 (6th Cir. 1992); LaGrant v. Gulf & Western Mfg. Co., Inc., 748 F.2d 1087, 1089 (6th Cir. 1984); and Barnes, 896 F.2d at 1461-62. Therefore, since Premier did not show it was under severe economic stress, Anderson claims that the heavier burden applied to RIF plaintiffs should not be applied to her.
 
 
 17
 Whether Premier was under severe economic stress is irrelevant to whether Anderson must produce other evidence of discrimination to state a prima facie claim. Whatever Premier's condition, the fact remains that Anderson was not replaced, and must therefore produce other evidence that Premier discriminated against her. Anderson might use her allegation that Premier was not experiencing economic stress to argue that the RIF was pretextual. Yet Anderson states in her brief that "[p]laintiff did not assert that the entire RIF itself was purely a pretext" and does not claim that she produced evidence of pretext. Anderson Br. at 14. We therefore determine that the district court properly required Anderson to produce additional evidence of discrimination to state a prima facie claim.
 
 
 18
 Anderson next argues that she raised issues of fact that indicated discrimination, which were improperly resolved against her. Anderson states there is a genuine issue of fact about whether the other BSLs were similarly situated to her. Anderson argues that Berke, a BSL, was similarly situated to her, but was transferred, not fired, and was male and younger. She states that there is a factual dispute over the composition of the Strategic Planning group, because she claims Berke was part of the group and Premier claims he had not yet been assigned to the group. She also claims that Berke was transferred from his BSL position to a position as Computer Systems Leader (without a change in job duties), while both Drimmer and Anderson, two older women, were not. She argues that the fact that Berke was retained when she was not provided proof of the fourth part of the prima facie test, citing Hawley, 958 F.2d at 724. She alternatively argues that she was similarly situated to the other four BSLs at Premier, because they held the "same job" as Anderson.
 
 
 19
 Premier counters that Anderson failed to demonstrate she was similarly situated to retained employees. First, Premier provided the affidavits of several employees to show that Berke was not yet assigned to the Strategic Planning unit when Anderson was dismissed. Therefore, Anderson could not claim that she was similarly situated to Berke. Nor could she show she was similarly situated to the other male or younger BSLs because each BSL was assigned specific responsibilities for a different functional area of the company. BSLs do not perform the same job, so the fact Premier retained male BSLs when it dismissed Anderson cannot support an inference of discrimination.
 
 
 20
 While Premier provided detailed affidavits to support its assertions, of the voluminous papers Anderson provided to support her brief opposing Premier's motion for summary judgment, only her own affidavit and deposition transcript express the view that Berke was a member of the Strategic Planning group. She does not produce evidence to support her assertion that the other BSLs were similarly situated to her, nor did she refute Premier's evidence that they were not. Anderson has not borne her burden of producing "specific facts showing that there is a genuine issue for trial," on this issue, and we hold that the district court did not err by determining that her allegations failed to raise any genuine issue of material fact. Fed. R. Civ. P. 56(e).
 
 
 21
 Anderson also argues that she produced evidence that Premier manipulated its workforce to her detriment, by requiring that she stay in Europe, so she was not made a "team leader" like the other BSLs. She also states that she was "far better" qualified than the other BSLs, and received far better performance reviews. She also states that Premier manipulated its workforce by forming the Strategic Planning group and then deciding to eliminate it just a few months later. From the record, it appears that Anderson's contentions regarding Premier's motives in requiring her to stay in Europe, and in forming a Strategic Planning group are not supported by any evidence.
 
 
 22
 However, Anderson does provide job assessments for the other BSLs in an effort to demonstrate her superior qualifications. It does not appear that these performance reviews establish that Anderson was a "far better" employee, who was nevertheless dismissed, which could create an inference of discrimination. These reviews therefore do not provide other evidence of discrimination that would allow Anderson to sustain a prima facie discrimination claim.
 
 
 23
 Anderson also argues that she produced statistics to show discrimination. Anderson states that Premier's Cleveland "management employees" before the RIF were 25.7% female (9 of 35 employees). Anderson continues:
 
 
 24
 The percentage of women of the employees who were in the work force on April 17, 1991 and were terminated both voluntarily and involuntarily between January, 1991 and July, 1992 was 50% (i.e. 4 of 8 employees). The percentage of women who were involuntarily terminated from management as a result of the RIF was 75% (i.e. 3 of 4 employees). Finally, of those management employees who were terminated as a result of the RIF for non-performance reasons, 100% were women. (i.e. 2 of 2 employees, Plaintiff and Drimmer) .... This is prima facie evidence of discrimination. Campbell v. Rust Engineering Co., 927 F.2d 603 (6th Cir. 1991) (Table) .[5]
 
 
 25
 Anderson Br. at 26. Anderson also argues that she generated statistical evidence of age discrimination:
 
 
 26
 The average age of all six BSLs in the Cleveland MIC System Development Group prior to Plaintiff's discharge was 45.7. After Plaintiff's discharge their average age dropped to 43.6. In addition the average age of upper level management in the Cleveland MIC Systems development Group ... was 43.8 prior to the RIF. It dropped to 42.4 after the RIF.
 
 
 27
 Anderson Br. at 27. Exhibits, J.A. at 257-62; Employee data, J.A. at 317-21.
 
 
 28
 While Anderson acknowledges that she has drawn these statistics from a small sample size, she argues that this court has recognized that small samples are sometimes acceptable in employment discrimination cases, and that coupled with her other evidence of discrimination, this court should find that she presented additional proof of discrimination sufficient to state a prima facie claim. McCabe v. Champion Intl. Corp., 916 F.2d 713 (6th Cir. 1990) (Table), 1990 WL 156104; EEOC v. New York Times Broadcasting Serv., 542 F.2d 356, 360 (6th Cir. 1976).
 
 
 29
 Premier counters that statistics involving small numbers of people, as here, are suspect, since only about eight people departed in the set of employees she analyzed. Simpson v. Midland-Ross Corp., 823 F.2d 937, 943 (6th Cir. 1987); New York Times Broadcasting, 542 F.2d at 360. Premier notes that Anderson cites New York Times Broadcasting for support, although in that case the plaintiff could supplement her small set of statistics with direct evidence of discriminatory intent, in that the hiring director in that case also stated that "he already had a woman reporter and did not expect to hire another." 542 F.2d at 358. Premier argues that Anderson's statistics do not demonstrate a disparity that would fall outside the expected statistical norms, given the small sample size, especially the age disparity statistic, which shows that the average age of BSLs declined only 2.1 years after Anderson's and Drimmer's termination, and the age of the nine "upper level management" employees declined only 1.4 years.
 
 We agree. In Simpson, this court stated:
 
 30
 Statistical evidence, such as that offered by Simpson, does not differ greatly from other types of proof.... Statistics gain relevance in one of two ways: the statistics, standing alone, reasonably lead to a particular conclusion validated by human experience, or comparative statistics point out discrepancies in behavior that would cause the average person to scrutinize the employer's motives .... For statistics to be valid and helpful in a discrimination case, "both the methodology and the explanatory power of the statistical analysis must be sufficient to permit an inference of discrimination." Segar v. Smith, 738 F.2d 1249, 1274 (D.C. Cir. 1984). The facts cited by Simpson do not tell us anything about age other than that some people were of various ages, facts that in and of themselves are meaningless.
 
 
 31
 Simpson, 823 F.2d at 944.
 
 
 32
 The weakness of Anderson's statistical assertions can be seen by examining her "proof" of sexual discrimination, based upon the claim that both of the two persons fired were women. As a purely statistical matter, the chance that both people terminated would be women, when chosen at random from a group of 26 men and 9 women, is about 6%.[6] While this is not the expected result, neither is it extremely unusual. It is what we would expect to happen on six occasions if 100 perfectly non-discriminating companies had to carry out the same reduction. We do not believe that a plaintiff in each of those six companies should automatically be able to get to a jury, based on no more evidence than is present here. Her other statistical examples are in the same range of statistical power and similarly unconvincing.
 
 
 33
 Therefore, Anderson's statistics do little more than demonstrate that the dismissal of two women in the RIF left the company with a higher concentration of male employees, and that the dismissal of an older employee reduces the average age of the remaining group. Without additional evidence of discriminatory animus, Anderson's statistics fail to provide additional evidence of discrimination.
 
 
 34
 We find that the district court correctly determined that Anderson failed to present sufficient additional evidence of discrimination to state a prima facie sex or age discrimination claim. The two additional allegations she substantiates with some evidence -- that she was "far better qualified" than other BSLs, and her offer of statistical proof of discrimination -- do not suffice to provide the necessary additional evidence to raise a genuine issue of material fact.
 
 
 35
 Therefore, we hold that the district court properly granted Premier's motion for summary judgment on Anderson's sex and age discrimination claims related to her dismissal.
 
 III
 
 36
 To establish a discrimination claim based on Premier's failure to promote Anderson, she must show that she applied for an available position, for which she was qualified, but was rejected under circumstances giving rise to an inference of discrimination. Burdine, 450 U.S. at 253.
 
 
 37
 Premier argues that Anderson has not shown that Premier's stated reason for going outside the company for a new director -- that the present staff was not competent to do the job -- was pretextual. Premier admits that it hired Tom Wojnarowski in October 1990 to become Director of Systems Development, although it did not immediately tell its employees that he would be taking this position. Premier notes that Anderson applied for the position in March 1991, once she learned that Premier was filling the position, but after Wojnarowski was hired. Therefore, Premier also states that the position was not available, and Anderson cannot argue that Premier's failure to hire her was due to discrimination.
 
 
 38
 We determine that the district court did not err by dismissing this claim. Anderson failed to bear her burden of producing evidence to state a discrimination claim for Premier's failure to promote her. Burdine, 450 U.S. 253-55.
 
 IV
 
 39
 Anderson also included a claim for age and sex discrimination, in violation of Ohio Rev. Code Sec. 4112.02(A), under the civil action provision of Sec. 4112.99. Under Ohio law, Anderson's age discrimination claim is barred by the 180- day statute of limitation in Sec. 4112.02(N), but her sex discrimination claim is not, as a six-year limitation term applies to it under Cosgrove v. Williamsburq, 638 N.E.2d 991 (Ohio 1994).
 
 
 40
 Ohio courts apply the McDonnell Douglas/Burdine framework to claims under state law. See Mitchell v. Toledo Hosp., 964 F.2d 577, 582 (6th Cir. 1992); Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civ. Rights Comm'n, 421 N.E.2d 128, 131-32 (Ohio 1981). Therefore, for the reasons previously stated, we affirm the district court's dismissal of Anderson state law sex discrimination claim.
 
 
 41
 We also find that the district court properly dismissed Anderson's breach of contract and promissory estoppel claims, for the reasons stated by that court.
 
 
 42
 AFFIRMED.
 
 
 
 [1]
 Wojnarowski was first announced as a "special assistant" to Baskind, in October 1990, although he was hired to be Director of Systems Development. Letter, J.A. at 168. In March 1991, Wojnarowski was "publicly" named Director of Systems Development
 
 
 [2]
 Wojnarowski noted that Berke was never transferred into Strategic Planning. Wojnarowski Aff., J.A. at 166. In fact, Berke did not complete work on his previous project until the first quarter of 1992. Baskind Aff., J.A. at 152; Berke Aff., J.A. at 170. Berke also stated that he did not meet with the Strategic Planning group on a regular basis. Berke Depo, J.A. at 205
 
 
 [3]
 Section 4112.02(A) reads:
 It shall be an unlawful discriminatory practice:
 (A) For any employer, because of the race, color, religion, sex, national origin, handicap, age, or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment.
 
 
 [4]
 To establish such a claim, Anderson must produce facts to show she (1) was a member of a protected class; (2) was subjected to adverse employment action; (3) was qualified for a particular position; and (4) either was replaced by a person not a member of the protected class or adverse employment action was not taken against a similarly situated person not a member of the protected class. McDonnell Douglas, 411 U.S. at 802; see also Barnes v. GenCorp. Inc., 896 F.2d 1457, 1464 n.6 (6th Cir.), cert. denied, 498 U.S. 878 (1990)
 
 
 [5]
 Although Anderson cites Campbell for support, the plaintiff in Campbell also produced direct evidence of discriminatory intent. The plaintiff testified that his manager told him that he "made a decision to go with Byrd as a younger person on my job." 1991 WL 27423 at ** 3. The court held that "[p]laintiff's testimony regarding his conversation with Morris and the circumstances surrounding his termination" provided the additional evidence required to state a prima facie discrimination claim in a work force reduction case. Id. at ** 4
 
 
 [6]
 9/35 X 8/34 = .0605